445 A.2d 1228

Benjamin F. HARVEY and Kathleen Harvey, his wife, Appellants,

v.

Elmer F. HANSEN, Jr., Barbara Aikens, Charles Aikens, Bucks County and New Britain Township.

Superior Court of Pennsylvania.

Argued Jan. 5, 1982.

Filed May 14, 1982.

Alan D. Williams, Doylestown, for appellants.

Gordon Erdenberger, Doylestown, for Hansen and Bucks County, appellees.

Glenn David Hains, Morrisville, for Aikens, appellees.

Henry F. Huhn, Cornwells Heights, for New Britain Tp., appellee.

Before SPAETH, CAVANAUGH and MONTEMURO, JJ.

MONTEMURO, Judge:

On February 1, 1975, Kathleen Harvey, appellant, was driving her automobile in a southerly direction on Upper State Road. Defendant/appellee, Barbara Aikens, was driving her automobile in an easterly direction on County Line Road. The two vehicles collided at the intersection of Upper

State Road and County Line Road, and as a consequence, the appellant sustained serious personal injuries.[1] The defendant/appellee, Elmer F. Hansen, Jr., was the owner of a tract of land located at the northwest corner of this intersection. In count 2 of her complaint, appellant alleged that defendant-appellee Hansen (hereinafter Hansen) was negligent because he maintained his property "in such a manner as to allow to exist thereon trees, bushes, shrubs, grasses and other plant growth" which obstructed the lateral view of appellant as she attempted to cross County Line Road. Additionally, appellant alleges that Hansen was negligent in failing to remove the obstructions to eastbound traffic on County Line Road and in failing to warn motorists of the hazardous condition created by the existence of the obstructions.[2]

After the pleadings were closed, Hansen filed a motion for summary judgment pursuant to Pa.R.C.P. 1035[3] on the theory that there was no genuine issue as to any material fact with regard to appellant's claim against him and therefore Hansen was entitled to judgment as a matter of law. On April 22, 1981 the lower court made a finding that no issue of material fact existed and that Hansen would prevail as a matter of law. The court granted Hansen's motion for

1. Appellant filed her complaint in trespass in both Bucks County and Montgomery County since the accident occurred on the borderline of those two counties. The two actions were subsequently consolidated into one action in Bucks County.

2. Although not relevant to this appeal, appellant's original complaint also named Aikens, New Britain Township, Warrington Township, Montgomery Township, Bucks County and Montgomery County as defendants. On September 14, 1977, the lower court sustained the preliminary objections of Warrington Township, Montgomery Township, Bucks County and Montgomery County and dismissed the complaint as to each of them. At the same time the court found that defendant Hansen's property was situated in New Britain Township. Aikens, Hansen and New Britain Township remained as defendants.

3. Pa.R.C.P. 1035 provides in pertinent part as follows:
   (a) After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits, if any.

summary judgment and this appeal followed. We agree with appellant that this was error.

In *Yaindl v. Ingersoll-Rand Co. Etc.*, 281 Pa.Super. 560, 565, 422 A.2d 611, 613 (1981) our court again set forth the well-established principles to be applied in deciding whether to grant a motion for summary judgment.

Summary judgment is made available by Pa.R.C.P. 1035, 12 P.S. Appendix when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. This severe disposition should only be granted in cases where the right is clear and free from doubt. To determine the absence of genuine issue of fact, the court must take the view of the evidence most favorable to the non moving party, and any doubts must be resolved against the entry of the judgment. (Citations omitted). *Husak v. Berkel, Inc.*, 234 Pa.Super. 452, 458, 341 A.2d 174, 177 (1975). See also *Amabile v. Auto Kleen Car Wash*, [249] Pa.Super. [240], 376 A.2d 247 (Filed June 29, 1977); *Bowman v. Sears, Roebuck & Co.*, 245 Pa.Super. 530, 369 A.2d 754 (1976). The moving party bears the burden of demonstrating clearly that there is no genuine issue of material fact. *Prince v. Pavoni*, 225 Pa.Super. 286, 302 A.2d 452 (1973); *Schacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968).

The lower court, relying primarily on *Haldeman v. Mercer*, 30 D. & C.2d 435 (1963), granted Hansen's motion for summary judgment on the theory that an owner of land owes no duty to persons not on his property, and specifically the appellant herein, to prevent visual obstruction caused by natural conditions on his land.[4] Slip op. at 2. The court also

---

**4.** In its opinion, the lower court stated, "Additionally the Harveys alleged that Hansen negligently failed to remove the *natural* growth and failed to warn motorists of the hazardous condition created by the growth all of which contributed to Mrs. Harvey's accident." (Emphasis supplied). Slip op. at 2. However, appellant never referred to trees, bushes, shrubs, grasses and other plant growth as *natural growth*; appellant's position was that they were maintained

distinguished Section 363(2), Restatement (Second) of Torts and the cases which follow it.

*Haldeman, supra,* decided the issue of a landowner's liability to motorists on an adjoining thoroughfare on the dichotomy between a "natural condition" of the land as opposed to an "artificial condition".[5] Further, the court interpreted Sections 363 and 364, Restatement (Second) of Torts to preclude liability where the overgrowth and natural foliage, which obscured the vision of motorists to both the stop sign and the intersection, was a "natural condition" of the land as opposed to a structure or other artificial structure placed upon the land by the landowner or a third person. (*Haldeman,* at 437)[6]

   by Hansen in such a way as to obstruct the lateral vision of motorists like the appellant and that he gave motorists no warning of these obstructions.

5.  In *Haldeman, supra,* the plaintiff alleged that the defendant landowner was liable for allowing overgrowth and foliage from the land to cover a stop sign and obscure the vision of motorists.

6.  Section 363, Restatement (Second) of Torts, provides as follows:
    § 363.  Natural Conditions
    (1) Except as stated in Subsection (2), neither a possessor land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.
    (2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway.
    Comment b. to Section 363 provides:
    b.  Meaning of "Natural condition of land." "Natural condition of the land" is used to indicate that the condition of land has not been changed by any act of a human being, whether the possessor or any of his predecessors in possession, or a third person dealing with the land either with or without the consent of the then possessor. It is also used to include the natural growth of trees, weeds, and other vegetation upon land not artifically made receptive to them. On the other hand, a structure erected upon land is a non-natural or artificial condition, as are trees or plants planted or preserved, and changes in the surface by excavation or filling, irrespective or whether they are harmful in themselves or become so only because of the subsequent operation of natural forces.
    The lower court correctly observed that the cases interpreting Section 362(2) did not impose liability on the landowner as a result of

480

In the instant appeal, the lower court found that "there is no indication that the condition in the instant case was not natural." Slip op. at 4. We agree with appellant that in making this finding, for which we find no support in the pleadings, deposition or answers to interrogatories, the lower court violated the well-established principles governing motions for summary judgment. *Yaindl v. Ingersoll-Rand Co. Etc., supra.* Whether or not the condition on Hansen's property was natural or artificial was an issue of existing fact which should properly be decided at trial by a jury. In deciding this issue in favor of the moving party, the court did further violence to the rules governing summary judgment by failing to examine the record in the light most favorable to the non-moving party, the appellant herein. However, we shall not remand on that basis alone.

The "natural condition" standard for imposing or not imposing liability creates the anomalous situation of imposing liability on a landowner who improves and maintains his property while precluding liability of a neighboring landowner who allows the "natural condition" of his property to run wild. Under this analysis, landowner A may plant hedges or bushes around the perimeter of his property and if they are allowed to become too thick or too tall so as to obstruct a motorist's vision of an intersection, he will be held liable. Landowner B, on the other hand, may neglect his property, allowing it to be overrun and overgrown with weeds, plants, grasses and other *natural foliage*, to an equal or greater detriment to passing motorists, but with no

*visual obstruction*, but "for injury caused by the physical impact of dead or decayed trees or parts thereof that fall onto persons or property on a public way" Slip op. at 5. In support of this interpretation, the lower court cited W. PROSSER, THE LAW OF TORTS, Chapter 10, Section 57, p. 354 (4th Ed. 1971), wherein Professor Prosser discusses the liability of landowners, rural and urban, for dangerous trees that *fall onto a public highway or city street*; the thrust of the lower court's argument being that Professor Prosser does not discuss *visual obstruction* caused by trees. We note, however, that the analysis by Prosser was not an attempt to interpret Section 363(2) of the Restatement (Second) of Torts. In any event, the lower court found no authority for extending the analysis of falling trees or parts of trees to visual obstruction and refused to do so.

liability to himself. The distinction appears to be arbitrary at best.

While it is true, as the lower court points out, that there are a paucity of cases on point in Pennsylvania, there are at least a few which speak to the issue. The rationale in these cases rests not with an inquiry into the duty of a landowner to persons not on his property, or whether the condition on the land was "natural" or "artificial." Instead, the inquiry focuses on the question of causation.

The first of these cases is *Cotter v. Bell*, 417 Pa. 560, 208 A.2d 216 (1965). There the plaintiff, a minor, was injured while riding his bicycle on a public street. The original defendant who was the operator of the motor vehicle which struck the minor plaintiff, joined as an additional defendant the owner of the property at the intersection where the accident occurred, alleging that the additional defendant was negligent in allowing a hedge at the perimeter of his property to grow in such a way as to obstruct the vision of motorists and more particularly the vision of the original defendant. The court in *Cotter, supra,* determined that the hedge was merely a "passive background or circumstance" of the accident and affirmed the lower court's entering of judgment on the pleadings in favor of the additional defendant.[7] Justice Eagan, writing for the majority, wrote further that "some may question the legal correctness of entering judgment on the pleadings in the situation presented, and may insist that the issue could more properly be determined after the evidence was completed at trial." *Cotter, supra,* 417 Pa. 560, 563, 208 A.2d 216, 218

7. The fact that in *Cotter,* judgment was entered on the pleadings, whereas in the case before us the lower court granted Hansen's motion for summary judgment, does not affect our holding here. As pointed out in Goodrich-Amram 2d, Section 1035(a)3, "The motion for judgment on the pleadings is limited exclusively to the pleadings themselves and no outside material may be considered ... The motion for summary judgment is designed to supplement the motion for judgment on the pleadings to provide for an equivalent summary disposition of the case where the pleadings may be sufficient on their face, to withstand a demurrer but where, in actuality, there is no genuine issue of fact and this can be conclusively shown through depositions, answers to interrogatories, admissions or affidavits."

(1965). As will be seen, this statement would prove to be prophetic.

In *Clevenstein v. Rizzuto*, 439 Pa. 397, 266 A.2d 623 (1970), the court once again had to concern itself with the passive actions of a third party in an intersection collision case. Again the writer for the majority was Justice Eagan and with remarkable coincidence the appeal was taken from an Order entered by the same trial judge as in *Cotter, supra*, Hon. J. William Ditter, Jr. of the Court of Common Pleas of Montgomery County. In *Clevenstein, supra*, the facts were quite different. The third party was not a landowner but the owner of a motor vehicle cited for violation of The Vehicle Code, Act of April 29, 1959, P.S. 58, § 1021(4), 75 P.S. § 1021(4) (Supp.1970)[8] and as a consequence of that violation it was obstructing the vision of passing motorists. The plaintiff, Clevenstein, was operating a motor bike and he collided at the intersection with an automobile owned by the original defendant Rizzuto. Clevenstein sued Rizzuto for damages, alleging in his complaint that Rizzuto drove his automobile into an intersection which was controlled by a stop sign without maintaining a reasonable lookout for the presence of other vehicles coming into the intersection from the through street, and that the negligence of Rizzuto caused the accident. Rizzuto then filed a complaint joining Williams as an additional defendant. Rizzuto, the original defendant, alleged that the additional defendant carelessly and negligently parked his vehicle in such a way as to obstruct the original defendant's view of the intersection; that the additional defendant's vehicle was parked in violation of the Vehicle Code; and that the parking of the vehicle in that location was the sole cause of the collision between Clevenstein and Rizzuto. The additional defendant filed preliminary objections in the nature of a demurrer alleging that the complaint of the original defendant failed to state a

8. At the time of the accident in *Clevenstein, supra*, this section of the Vehicle Code specifically prohibited the parking of vehicles within 25 feet of the curb lines of an intersection, or if no curb lines existed, then within 15 feet of the property lines at the intersection of the highway.

cause of action. The preliminary objections were sustained by the lower court. Our Supreme Court reversed the lower court's order sustaining the additional defendant's preliminary objections and in so doing it reversed its holding in *Cotter, supra*. Justice Eagan, combining logic with admirable jurisprudential candor, wrote as follows:

> One further matter needs discussion. The lower court's action herein was based on our decision in *Cotter v. Bell*, 417 Pa. 560, 565, 208 A.2d 2126 (1965), and this is understandable ... We ruled that the property owner's conduct, even if negligent, was merely a passive circumstance of the accident and hence, not the proximate cause thereof. *Our research indicates that Cotter was the first instance wherein we decided the question of superceding cause in the context presented at a preliminary stage in the proceedings. In other relevant cases, the question was resolved only after the facts were developed at trial.* (Citations omitted). *Cotter* might possibly be distinguished from the instant case on the ground that therein a hedge was involved, i.e., a static or rather permanent condition, as opposed to a moveable object, or that the object obstructing the visibility was located off the highway. We prefer to be more intellectually honest than to rely on such tenuous distinctions. Better, should we say, "Wisdom should never be rejected merely because it comes late." (Emphasis supplied).

In *Estate of George M. Flickinger v. Ronald Ritsky and Marona Construction Co.*, 452 Pa. 69, 305 A.2d 40 (1973), our Supreme Court again addressed the issues raised in *Cotter* and *Clevenstein*. In this case appellants' decedent was driving his motorcycle northbound on a four lane highway. At the same time, the defendant, Ritsky, pulled onto the highway from a "Dairy Queen" parking lot on the easterly side of the highway. Ritsky's car and Flickinger's motorcycle collided, and Flickinger was killed. A week prior to the collision the defendant Marona Construction Company (hereinafter Marona) had, in the course of laying a sanitary sewer pipe, piled dirt from the sewer excavation onto the berm of

the highway. The dirt pile was located 138 feet south of the point at which Ritsky exited from the parking lot and in the direction from which Flickinger approached the summit of collision. Flickinger's father, as administrator of his son's estate, filed survival and wrongful death actions against Ritsky on the theory that he was negligent in entering the highway without an adequate view of oncoming traffic and against Marona on the theory that the construction company was negligent in permitting a pile of dirt to obstruct the vision of drivers such as Ritsky. The actions were settled out of court with Ritsky, but they proceeded to trial against Marona. The jury returned a verdict for plaintiffs and the lower court granted Marona's motion for judgment n.o.v. and our court affirmed on appeal. The Supreme Court granted allocatur to consider the question of proximate causation presented in light of its decision in *Clevenstein* and reversed the order of our court, vacated the judgment n.o.v., and remanded the case for entry of judgment on the verdict.

Mr. Justice Pomeroy, writing for a unanimous court, observed that "both *Cotter* and *Clevenstein* were cases in which the question of superceding causation was raised at a preliminary stage of the case. In *Cotter* we affirmed the grant of judgment on the pleadings in favor of the defendant who was 'passively' negligent whereas in *Clevenstein* we reversed the grant of judgment on the pleadings in favor of the defendant." In *Flickinger*, the case went to trial and the jury found against the party, *Marona*, whose antecedant act constituted the "passive" negligence. Relying on *Cotter*, the lower court granted judgment n.o.v.

Justice Pomeroy found it necessary to "explore further the validity of the 'passive condition' argument vis a vis the question of proximate causation in Pennsylvania" for the reason that there may have been uncertainty whether the courts dissaproved of *Cotter* "as based only on the fact that it had decided a difficult causation question as a matter of law before the evidence was in, or whether we also disapproved of the substantive holding which was a repetition of

that in *Kite v. Jones*, 389 Pa. 339, 132 A.2d 683 (1957): 'An act of negligence which merely creates a passive background or circumstance of an accident is not the proximate cause thereof, where the accident is, in fact, caused by an intervening act of negligence which is a superceding cause.' " (citing *Cotter, supra* ).

The *Flickinger* court stated further that:

The controlling *rule of law* in Pennsylvania on the extent of liability of negligent actor, i.e., the law of proximate causation, where that question is presented in the light of an intervening act of negligence, is contained in section 447 of the Restatement (Second) of Torts (1965):

§ 447. Negligence of Intervening Acts.

The fact that an intervening act of a third person [here Ritsky] is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's [here Marona's] negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct *should have realized* that a third person might so act, or

(b) a *reasonable man* knowing the situation existing when the act of the third person was done would not regard it as *highly extraordinary* that the third person had so acted, or

(c) the intervening act is a *normal* consequence of a situation created by the actor's conduct and the manner in which it is done is not *extraordinarily* negligent. (Emphasis supplied).

It is easily seen that this statement of the law, like the rules controlling the question of what conduct is negligent presents *fact questions* of its own force. An intervening negligent act will not be a superseding cause relieving the original negligent actor from liability *if* that actor at the time of his negligent act *should have realized* that another person's negligence might cause harm; or, if a *reasonable man* would not regard the occurrence of the intervening negligence as *highly extraordinary* ; or, if the intervening act is not *extraordinarily negligent.* What the original

actor should have realized and what a reasonable man would say was highly extraordinary are, of course, fact questions which must in the majority of cases be left to the jury. The Restatement (Second) of Torts § 453 (1965), (Comment b), makes quite clear this division of responsibility as between court and jury:

"If, however, the negligent character of the third person's intervening act or the reasonable foreseeability of its being done is a factor in determining whether the intervening act relieves the actor from liability for his antecedent negligence, and under the undisputed facts there is room for reasonable difference of opinion as to whether such act was negligent or foreseeable, the question should be left to the jury."

The *Flickinger* rationale sheds considerable light on the case presented to us in this appeal. The message of *Flickinger*, which we hold is dispositive of this appeal, is that the issue of factual causation should be decided at trial. *Flickinger, supra,* 452 Pa. at 76, 305 A.2d at 44, enunciates the point succinctly:

*It must be acknowledged as appellee argues, that at times in the past this Court has been of the view that persons who have proceeded without due regard for obvious physical obstructions to vision—fences, hedges, parked trucks and the like—have been extraordinarily negligent as a matter of law and that therefore liability should terminate short of the negligent constructor of the hedge or the fence, or the driver of the truck.* At the same time it is necessary to recognize that normally such situations present essentially *factual questions* under the principles of section 447 of the Restatement (Second) of Torts, and that *where reasonable minds could differ, resolution of such questions is properly left to the jury.*

The wisdom which may be said to have come late to this Court with regard to the problem presented by this type of case is the recognition that *"the [passive condition] is now almost entirely discredited".* W. PROSSER, *LAW OF TORTS § 49, at 286 (1964)* : this Court will no longer attempt to solve questions of proximate causation by

resort to the label "passive." As Professor Prosser puts it, "it is not the distinction between 'cause' and 'condition' which is important, *but the nature of the risk and the character of the intervening cause.*" Id. at 286 (emphasis added). These two factors, of course, are the central concern of section *447 of the Restatement.*

■ The *Haldeman* case, which gave us the "natural v. artificial condition" analysis for determining a landowner's liability for obstructing the vision of passing motorists, was a 1963 Chester County case which was never appealed, which has never been followed, and which we now specifically reject.

■ As we have seen, the *Flickinger* court laid to rest the "passive condition" distinction and decided the case on the legal principles set forth in the Restatement (Second) of Torts, Section 447.[9] Applying those same principles to this case, whether appellant's conduct here was such a superceding cause as to relieve Hansen of liability, or whether a reasonable man would regard appellant's conduct as highly extraordinary or whether appellant's conduct was extraordinarily negligent, are all fact questions which should be submitted to a jury.

Although not applicable here because the effective date of the statute was July 1, 1977, the legislature recognized the hazardous nature of visual obstructions to passing motorists when it enacted the following amendment to the Vehicle Code:[10]

"It is the duty of the owner of real property to remove from the property any tree, plant, shrub or other similar obstruction, or part thereof, which by obstructing the view of any driver constitutes a traffic hazard."

Thus, property owners are now on notice that they should remove or cut back foliage which obstructs the vision of passing motorists at an intersection.

**9.** The language of section 447 of the Restatement has been adopted by the court in various previous decisions. See cases cited in footnote 6, in *Flickinger, supra.*

**10.** 75 Pa.C.S.A. § 6112(a).

Finally, to decide as a matter of law that Hansen bears no liability is especially disconcerting here because it was the plaintiff's vision rather than defendant's which was obstructed. By removing Hansen as a defendant, it may well be impossible for a jury to accurately ascertain and assess liability. The defendant-appellees, Aikens, apparently share this belief and have fully incorporated by reference and have adopted as their brief the brief of appellants.

For all of the foregoing reasons, the order of the court below is reversed and the record is remanded for further proceedings consistent with this opinion.

This court does not retain jurisdiction.

CAVANAUGH, J., files a concurring statement.

CAVANAUGH, Judge, concurring:

I agree with the majority that the court below erred in entering summary judgment in favor of the landowner, Elmer F. Hansen, Jr. However, I would reverse only on the basis that there is a genuine issue of fact concerning the conditions existing on Mr. Hansen's property at the time of the accident. In my opinion, the remaining matters with which the majority deals are not germane to the issue which we are called upon to decide.