# Smith v. United States Fidelity & Guaranty Co.

C.P. of Lycoming County, no. 97-01,251.

*Robert B. Elion,* for plaintiff.
*Robert A. Seiferth,* for defendant.

KIESER, *J.*, December 17, 1998—This matter is before the court on the defendant's motion for judgment on the pleadings, filed July 15, 1998.[1] The matter came to be heard at oral argument before this court on October 20, 1998. At that time, an order was entered memorializing the parties' stipulations that: (1) the court shall exercise jurisdiction for purposes of determination of the statute of limitations issue as presented in the motion; (2) the court's ruling on that issue would be final for purposes of rendering a judgment and appeal; and (3) neither party would challenge the court's jurisdiction to render a decision with reference to the statute of limitations issue. It was also determined at the time of entering the order that defendant USF&G has named an arbitrator and is in agreement that should the court decide against the defendant on the statute of limitations, the parties would proceed immediately to arbitration on the merits unless a timely appeal of such decision was filed. Accordingly, plaintiff's request for a mandatory injunction set forth in Count 2 of plaintiff's complaint filed March 9, 1998 is rendered moot. See order and attached stipulation filed October 22, 1998.

A motion for judgment on the pleadings is properly granted if the pleadings show no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law. *Kelly v. Nationwide Insurance Company,* 414 Pa. Super. 6, 606 A.2d 470 (1992). A motion for judgment on the pleadings is limited exclusively to the pleadings themselves, and no outside material may be considered. The motion for summary judgment, by contrast, is designed to provide for an equivalent

---

1. Briefs of the parties have been received and considered as follows: defendant's brief in support of the motion filed September 29, 1998 and plaintiff's brief in opposition filed October 14, 1998.

summary disposition of the case where the pleadings may be sufficient on their face to withstand a demurrer but where in actuality there is no genuine issue of fact. The lack of a material factual dispute may be conclusively established through depositions, answers to interrogatories, admissions or affidavits. Goodrich-Amram 2d §1035(a)(3); *Harvey v. Hansen,* 299 Pa. Super. 474, 445 A.2d 1228 (1982). See also, Pa.R.C.P. 1035.1 et seq.; cf. Pa.R.C.P. 1034. Notwithstanding the defendant's styling of the motion as a motion for judgment on the pleadings, the parties have stipulated the statute of limitations issue before this court is to be determined under the summary judgment procedure. Accordingly, we will consider the 14 exhibits attached to plaintiff's complaint (A-N), and the deposition of defendant's claim representative, Mr. Frank Connor, which was taken on June 24, 1998.[2]

The parties agree that the contractual four-year statute of limitation established by 42 Pa.C.S. §5525 governs this case but disagree as to the date when the four-year period began to run. For purposes of deciding the motion, the following facts are considered by the court in a light most favorable to the non-moving party:

(1) This action arises out of an automobile accident which occurred on October 3, 1991.

(2) The plaintiff, Ellen L. Smith, was operating a vehicle owned by her mother, Beryl I. Smith.

---

2. Pennsylvania Rule of Civil Procedure 1035.1 defines the "record" to be utilized by the court on a motion for summary judgment to include (1) the pleadings, (2) depositions, answers to interrogatories, admissions and affidavits, and (3) reports signed by an expert witness that would, if filed, comply with Rule 4003.5(a)(1), whether or not the reports had been produced in response to interrogatories.

(3) The vehicle accident occurred as a result of the negligence of Kenneth Stewart, now deceased, who failed to stop at a red light which controlled his lane of travel. As a result of the accident, plaintiff sustained personal injuries.

(4) At the time of the accident, Kenneth Stewart was insured under an automobile policy issued by State Farm Insurance Company. Plaintiff's automobile was insured by defendant, United States Fidelity & Guaranty Company (USF&G).

(5) On or about July 27, 1993, plaintiff through counsel received an oral offer from a representative of State Farm to settle her claim against Kenneth Stewart in the amount of $25,000, the policy limits of Mr. Stewart's insurance coverage.

(6) The next day, July 28, 1993, plaintiff's counsel wrote a letter to the State Farm representative, seeking confirmation of the $25,000 offer and indicating plaintiff's intent to pursue a claim for underinsured motorists' benefits.

(7) On the same date, plaintiff's counsel wrote a letter to David Daley, claims representative for defendant USF&G, advising of the $25,000 policy limit offer of State Farm, notifying USF&G of plaintiff's intent to pursue the underinsured motorists' claim under her policy with USF&G, and further seeking USF&G's waiver of its subrogation rights against Kenneth Stewart. See exhibit "B" to plaintiff's complaint.

(8) On July 30, 1993, State Farm wrote counsel for plaintiff, enclosing a release form and stating that State Farm would hold the settlement check until it received a release signed by the plaintiff. See exhibits "C," "D" and "E" to plaintiff's complaint.

(9) Plaintiff signed the State Farm release on August 3, 1993.

(10) On August 6, 1993, plaintiff's counsel again wrote to USF&G (Frank Connor being its representative) enclosing the July 30, 1993 letter of State Farm and again seeking USF&G's waiver of subrogation. See exhibit "F" to plaintiff's complaint.

(11) On August 26, 1993, plaintiff's counsel once again wrote to defendant USF&G (Patricia F. Natale, its claims adjuster) advising of the policy-limit's offer of State Farm and once again seeking USF&G's waiver of subrogation. See exhibit "G" of plaintiff's complaint.

(12) On September 10, 1993, on behalf of USF&G, Frank Connor wrote plaintiff's counsel, advising that USF&G was seeking asset information regarding Mr. Stewart before making a decision relative to waiver of subrogation. See exhibit "H" to plaintiff's complaint.

(13) On October 1, 1993, plaintiff's counsel wrote defendant USF&G, enclosing the July 30, 1993 letter of State Farm and again seeking USF&G's waiver of subrogation. See exhibit "I" to plaintiff's complaint.

(14) On October 6, 1993, defendant USF&G orally advised plaintiff's counsel USF&G had agreed to waive its subrogation rights against Mr. Stewart.

(15) Plaintiff's counsel then advised State Farm of the executed release of Mr. Stewart, and State Farm could be provided bond upon USF&G's commitment to waive subrogation.

(16) On October 11, 1993, a representative of State Farm wrote to plaintiff's counsel, enclosing its settlement check in the amount of $25,000. See exhibit "J" of plaintiff's complaint.

(17) On October 14, 1993, USF&G wrote plaintiff's counsel, offering its written waiver of subrogation. See exhibit "L" to plaintiff's complaint.

(18) On October 15, 1993, counsel for plaintiff wrote to a representative of State Farm, enclosing the release of plaintiff. See exhibit "M" to plaintiff's complaint.

(19) On August 14, 1997, plaintiff, in pursuit of the claim under her USF&G policy for underinsured motorists' benefits, appointed an arbitrator and notified USF&G appropriately thereof.

(20) On August 20, 1997, plaintiff filed a praecipe for a writ of summons against USF&G.

(21) On March 9, 1998, plaintiff's complaint requesting relief in two counts was filed. Count 1 asked the court to give relief by way of a declaratory judgment regarding the rights of the parties. Count 2 was a request for a mandatory injunction which, as previously discussed, has been mooted.

Given the parties' request that the court assume jurisdiction of the statute of limitations issue, the first two grounds for defendant's motion for judgment on the pleadings, whether the arbitration panel must in the first instance decide the limitations issue and whether the judicial determination should be rendered within the context of a motion for summary judgment rather than for a motion for judgment on the pleadings, have been resolved. The issue is whether plaintiff's claims are barred by the applicable statute of limitations of four years. More precisely, the issue is whether the time under the statute begins to run July 28, 1993, the date when plaintiff learned of the third party tortfeasor's insurance limits through application of the "discovery rule;" or on October 14, 1993, when defendant USF&G advised plaintiff in writing that USF&G would

waive its subrogation rights against the third party tort-feasor.

The defendant asserts that July 28, 1993 is the undisputed time at which plaintiff acknowledged its intent to pursue the underinsurance claim. Defendant further asserts that this court should analogize this case with the existing law respecting *uninsured* claims. According to the Pennsylvania Superior Court's 1983 decision in *Boyle v. State Farm Mutual Auto Insurance Company,* 310 Pa. Super. 10, 456 A.2d 156 (1983), the statute starts to run on an *uninsured* claim when the following events have occurred:

(1) The insured was in a motor vehicle accident;

(2) The insured sustained bodily injury as a result of that accident; and

(3) The insured knows of the uninsured status of the other owner or operator.

In uninsured cases, this "discovery rule" has been further refined to provide that the rule is objective in that it fixes knowledge on one who "knows or should have known" of the uninsured status of the other party. See *Seay v. Prudential Property and Casualty Insurance Co.,* 375 Pa. Super. 37, 543 A.2d 1166 (1988). Applying similar logic, defendant here argues that as of July 28, 1993, when plaintiff's counsel had reached a settlement with the liability carrier based on policy limits, the statute of limitations commenced running because the insured "knew of the existence of an underinsured claim." See defendant's brief in support of motion for judgment on the pleadings, p. 6. Thus, if the court accepts the defendant's position and finds that the statute began running on July 28, 1993, plaintiff's complaint would clearly be barred by the four-year statute of limitations as the plaintiff's appointment of an arbitrator on August 14, 1997 was outside of the statute.

The plaintiff counters that the claim for underinsured motorists' benefits could not have accrued at least until the time that the defendant provided her with its written waiver of subrogation rights and its consent to settle her claim with Mr. Stewart. It points to the defendant's insurance contract which provides, relating to "underinsured motorists' coverage—Pennsylvania" . . . . "We do not provide underinsured motorists' coverage for 'bodily injury' sustained by any person if that person or the legal representative settles the bodily injury claim without our consent." See insurance contract attached to plaintiff's complaint as exhibit "B." Plaintiff further points to the deposition testimony of representative Frank Connor on June 24, 1998 who, in response to the question, "Did your internal procedure require that a written waiver of subrogation be executed before you could settle an underinsurance claim?" responded, "I think that is a fair statement." Connor deposition, p. 33. Thus, plaintiff argues that if it had settled its case with Mr. Stewart without the consent of USF&G, her rights to the underinsured motorists' benefits would have been forfeited. Plaintiff further argues that USF&G should not be permitted to withhold the consent to settle and waiver of subrogation to plaintiff's detriment respecting the limitation issue. The court agrees with plaintiff's analysis.

During the period in which USF&G withheld its consent and continued its investigation, the plaintiff was not in a position to bring suit to enforce the underinsured benefits claim. The matter is thus factually and legally distinguishable from the uninsured analysis set forth above, where there is no such impediment to the bringing of a claim, and the statute could reasonably be interpreted to run against a plaintiff who fails to pursue such a claim after having notice of its existence. A party-plaintiff injured in an automobile accident, upon

learning the offending motorist has no insurance, can immediately pursue a claim against their own insurance carrier for uninsured benefits. This is not so if the injured party-plaintiff discovers the offending motorist is insured, but the liability limit of that coverage is inadequate to pay the party-plaintiff's claims.

In the decision of *Daley-Sand v. West American Insurance Company,* 387 Pa. Super. 630, 564 A.2d 965 (1989) the Pennsylvania Superior Court has to some extent addressed the rationale that this court employs here. In that case, the court recognized an equitable remedy in favor of a plaintiff faced with an under-insurer's refusal to give consent by giving the under-insurer the option of paying the settlement within a fixed period of time and retaining its rights to subrogation, or waiving its subrogation rights. This was a specific recognition of the dilemma in which a plaintiff is placed in such a scenario. It illustrates the fundamental unfairness that would flow from allowing a defendant to dictate the terms on which a plaintiff can act to protect its claims and then try to benefit from a limitations period shortened by the defendant's own conduct in not providing for a timely resolution of its position on subrogation. It does not matter that the defendant may have legitimately taken a long time to make an intelligent subrogation decision. During the time USF&G took to act, the plaintiff in the case at bar was effectively paralyzed. We cannot in good conscience hold as a matter of law that the plaintiff in this case should have (or even could have) pursued a claim which contractually had not ripened until the liability and coverages of the defendant Stewart under the State Farm policy were resolved.

Thus, we hold that the statute of limitations in this case began to run on October 14, 1993 when USF&G

provided its written waiver of subrogation rights. Plaintiff's underinsurance claim against USF&G was commenced by writ of summons on August 20, 1997. This occurred within the four-year limitations period. Accordingly, the defendant's motion for summary judgment must be denied.

## ORDER

And now, December 17, 1998, the defendant's "motion for judgment on the pleadings" filed July 15, 1998, regarded as hereinabove described as a motion for summary judgment as the court has, with the concurrence of the parties, considered additional evidence beyond the pleadings, for the reasons set forth in the foregoing opinion in support of this order, is denied.