**Wynkoop v. Luke**

538

C.P. of Armstrong County, no. 1999-0142-Civil.

*Cynthia Danel,* for plaintiff.
*Thomas Lonich,* for defendant Luke
*Robert McDermott,* for the Commonwealth.

VALASEK, *J.,* June 11, 2004—This case arises from a single-vehicle accident which occurred when plaintiffs' vehicle was struck by a 90-foot high dead tree which uprooted and fell from an adjacent hillside onto a two-lane road, State Route 28/66. The plaintiffs, husband and wife, were injured, and their 13-year-old son, Cory Wynkoop, was killed as a result of the accident. The tree which fell was located on land owned by the co-defendant, Gloria Luke, about 15 feet beyond the edge of PennDOT's right-of-way, on a rather steep but traversable slope. Plaintiffs brought personal injury actions on their own behalf and wrongful death and survival actions in connection with the death of their son. They sued PennDOT in negligence, alleging that it permitted a dead tree to stand adjacent to a public highway, failed to warn motorists of the dead tree, failed to inspect, failed to remove the dead tree, and failed to have the adjacent landowner remove the tree. Plaintiffs also sued Luke in negligence, alleging, among other things, that she had failed to properly inspect the area for dangerous conditions, failed to discover the dangerous condition, and permitted a dangerous condition to exist by "failing to remove the dangerous, rotten, diseased, decayed or dead tree" from an unstable, rocky slope when she knew or should have known of imminent danger to the traveling public because nearby trees in a similar condition had previously fallen onto the road. Both defendants have filed motions for summary judgment.

## THE COMMONWEALTH'S MOTION FOR SUMMARY JUDGMENT

The court has read and re-read the report of Dr. Ray R. Hicks Jr. and the addendum thereto. That portion of the addendum concerning his calculation of the drip-line arguably is based on a sleight-of-hand use of statistics. Further, he never directly states an opinion concerning the slant of the tree trunk. Nonetheless, the last paragraph of the addendum is sufficient (barely) to establish some overhang. Since Dr. Hicks also states that "roots of trees . . . typically extend to and beyond the aerial drip-line," there is sufficient (barely) evidence to establish that the fallen tree's root system extended into the soil beneath the surface of the right-of-way.

However, the fact that some tree limbs may have overhung the highway right-of-way (not the paved portion) and the fact that some of the tree's roots may have penetrated the soil beneath the right-of-way (not the paved portion) are, taken together, simply insufficient to make the case fall within the "real property/highway" exception to sovereign immunity found at 42 Pa.C.S. §8522(b)(4). This subsection sets forth an exception to the general rule that the Commonwealth is immune from tort liability, and it reads as follows:

*"(4) Commonwealth real estate, highways and sidewalks.—A dangerous condition of Commonwealth agency real estate* and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a

Commonwealth agency, except conditions described in paragraph (5)." 42 Pa.C.S. §8522(b)(4). (emphasis added)

For the exception to immunity to apply, the injury must be caused by a condition of government realty itself, deriving from, or having realty as its source. *Marker v. PennDOT,* 677 A.2d 345 (Pa. Commw. 1996). In the instant case, it was not the condition of the government realty itself which caused Cory Wynkoop's death. This ruling is in accord with the often stated general rule that statutory exceptions to governmental immunity must be strictly construed. *Finn v. City of Philadelphia,* 541 Pa. 596, 664 A.2d 1342 (1995).

Lastly, this ruling dovetails perfectly with section 410 of the State Highway Law (36 P.S. §670-410), which permits the Department of Transportation "to trim and cut away any trees . . . growing on adjacent property *in so far as they overhang or encroach upon the legal right-of-way of any state highway.*" This statute clearly gives the Commonwealth a right but creates no duty to trim. Nothing in the statute magically makes the Commonwealth the "owner" of an encroaching tree.

## LUKE'S MOTION FOR SUMMARY JUDGMENT

Defendant Luke urges the court to apply the principle enunciated in section 363(1) of the Restatement (Second) of Torts, which reads as follows:

"(1) Except as stated in subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land."

Luke points out that the evidence unequivocally establishes that the dead tree and the reasons for its falling can all properly be labeled a "natural condition" of her land. The court agrees that the record unequivocally establishes these things collectively to be a "natural condition" of Luke's 59-acre tract.

The court notes that section 364 of the Restatement (Second) of Torts would impose liability upon a landowner to others outside the land "for physical harm caused by . . . [an] artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of harm . . . ." Thus, the Restatement draws a sharp distinction between natural and artificial conditions.

Plaintiffs, in opposition to defendant Luke's motion for summary judgment, assert that Pennsylvania's appellate courts have rejected any distinction between natural conditions and artificial conditions. Plaintiffs cite *Harvey v. Hensen,* 299 Pa. Super. 474, 445 A.2d 1228 (1982), in support of their position. In *Harvey,* plaintiff was injured in an automobile wreck allegedly caused by a line-of-sight obstruction at an intersection. The obstruction was comprised of vegetation on defendant's land. The *Harvey* opinion conclusively suggests that the vegetation was regarded by plaintiff Harvey herself and by the Superior Court as an "artificial condition," despite the "finding" of the trial court that it was a "natural condition."

Despite the Superior Court's regarding *Harvey* as involving an "artificial condition," it nonetheless opined that "[t]he distinction [between artificial and natural conditions made by sections 363 and 364 of the Restate-

ment] appears to be arbitrary at best." 299 Pa. Super. at 481, 445 A.2d at 1231.

Plaintiffs also rely upon *Barker v. Brown,* 236 Pa. Super. 75, 80-81, 340 A.2d 566 (1975). In that case, plaintiff Barker had a home in a residential neighborhood and the tree of his neighbor, defendant Brown, toppled onto his lot, causing property damage. The Superior Court opined:

"A tree growing in an urban or residential setting does not have the same relation to surrounding land as a tree located in a rural setting. That tree, once growing in the midst of a forest, is no longer the same 'natural object' when a city . . . or residential areas are developed in proximity to it. Specifically the relatively minor expenditures in time and money that it will take to inspect and secure trees in a developed or residential area is not large when compared with the increased danger and potential for damages represented by the fall of such a tree."

In the instant matter, the court is extremely reluctant to hold that the distinction between artificial and natural conditions is to be completely ignored; that the principle of liability enunciated in section 364 be extended to natural conditions; and that the principle of non-liability for natural conditions enunciated by section 363(1) be abolished entirely. To so hold would impose a duty upon all landowners to inspect their properties for dangerous natural conditions and either warn of or remedy them. Such a duty would necessarily not be limited to trees, but would include such things as springs, ponds, creeks, lakes, snow and ice formations, rock formations, soil conditions, etc., all of which conceivably can cause harm outside the land

itself. The duty could be extraordinarily burdensome and impractical to perform in many cases.

This does not mean, however, that the court is unwilling to state defendant Luke was under a duty of care to protect motorists traveling on the highway abutting her land. The Superior Court certainly has not hesitated to find a duty in tree/vegetation cases, as evidenced by *Harvey* and *Barker*, cited above. In addition, section 363(2) of the Restatement (Second) of Torts reads as follows:

"(2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway."

Although subsection (2) explicitly applies to urban land, a caveat to section 363 states

"The institute expresses no opinion as to whether the rule stated in subsection (2) may not apply to the possessor of land in a rural area."

In view of appellate case law recited above, it can safely be said that the Superior Court is not emphasizing distinctions between artificial and natural conditions or between urban and rural areas. Although we have already expressed our reservation about entirely abrogating the distinction between artificial and natural, we are far less hesitant to abrogate the distinction between urban and rural areas referred to in subsection (2) and the caveat.

The urban/rural dichotomy certainly was once a shorthand way of distinguishing between busy urban thor-

oughfares and sleepy country roads. Today, many rural roadways accommodate very high volumes of traffic.

The record in this case contains evidence that, on an average, more than 5,600 motor vehicles per day travelled past the site where defendant Luke's tree crushed the Wynkoop car—a rate of nearly one vehicle every 15 seconds. Taking into account the likely fact that the road is little used between midnight and 5 a.m., the daytime stream of traffic would be even higher. If, as indeed happened, a tree from Luke's land would fall upon the highway, the chance that it will cause serious harm to a motorist is substantial.

Accordingly, the court holds that a possessor of land in a non-urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway. As in all negligence cases, the amount of care required by the law must be in keeping with the degree of danger involved.

An appropriate order will be entered concerning both motions.

## ORDER

And now, June 11, 2004, it is hereby ordered as follows:

(1) the motion for summary judgment filed by defendant Gloria Luke is denied;

(2) the motion for summary judgment filed by defendant PennDOT is granted and judgment is hereby entered in favor of said defendant on all of plaintiffs' claims.