736 F.2d 912
 39 Fed.R.Serv.2d 346
 Edward C. McGARR, Parent and Natural Guardian of Edward
Christopher McGarr, a minor, and Edward C. McGarr,
in his own right, Appellants in No. 83-1710,
v.
UNITED STATES of America, Appellant in No. 83-1729.
 Nos. 83-1710, 83-1729.
 United States Court of Appeals,
Third Circuit.
 Argued May 17, 1984.
Decided June 15, 1984.
 
 Lawrence E. Grant, Esther Hornick (argued), Paoli, Pa., for appellant, cross-appellee, McGarr.
 Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Susan Dein Bricklin, Asst. U.S. Atty. (argued), Philadelphia, Pa., for appellee and cross-appellant, United States.
 Before GIBBONS and HUNTER, Circuit Judges, and STAPLETON, District Judge*.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 Edward C. McGarr, on his own behalf and as parent and guardian of his minor son, appeals from an order entered on September 15, 1983, dismissing with prejudice his complaint against the United States under the Federal Tort Claims Act, 28 U.S.C. Sec. 1346(b) (1982). The United States cross-appeals, contending that the district court abused its discretion in reentering its order of dismissal on September 15, 1983, so as to permit a timely appeal. We affirm in No. 83-1729, the appeal by the United States. We reverse in No. 83-1710, the appeal by McGarr.
 
 I.
 The Complaint and the Court's Ruling
 
 2
 McGarr alleges that his son, Edward Christopher McGarr, was seriously injured when on April 3, 1982, McGarr's automobile went out of control on County Line Road and struck a tree. The road is owned by the Commonwealth of Pennsylvania, but traverses the Valley Forge National Historical Park, which is owned by the United States. The amended complaint alleges:
 
 
 3
 The aforesaid accident was caused by the negligence, carelessness and recklessness of the United States of America in creating or permitting to remain on its property a condition which involved an unreasonable risk to those travelling on the highway adjacent thereto.
 
 
 4
 App. at 79-80. McGarr filed the amended complaint after the trial court held that the initial complaint failed to allege a basis under Pennsylvania law for liability of the United States as a landowner. In response to the government's Rule 12(b)(6) motion to dismiss, McGarr indicated in a memorandum to the court what he expected to prove:
 
 
 5
 It is the plaintiff's position that the muddy, slippery and dangerous condition upon the roadway and bridge were caused by runoff and other material from the land adjacent to the highway which is sloped on the highway and bridge. Plaintiff's position is that it was the Defendant's responsibility not to permit a dangerous condition to exist upon its land which would create, permit, or cause a dangerous condition upon the adjacent highway.
 
 
 6
 * * *
 
 
 7
 The dangers of a flooded or washed out or muddy road and bridge are evident and certainly foreseeable where proper runoff and drainage are not secured.
 
 
 8
 App. at 162, 166. McGarr also made clear to the court that he pleaded alternatively the maintenance of a dangerous natural condition and a dangerous artificial condition, asserting that
 
 
 9
 discovery may yet reveal the existence of an artificial condition such as grading, drainage course or shoring excavation so as to cause the muddy, slippery and dangerous conditions Plaintiff encountered while crossing County Line Road Bridge.
 
 
 10
 Reply Brief on Motion to Dismiss, at 2. That position is consistent with the allegation that the United States was negligent "in creating or permitting to remain on its property a condition which involved an unreasonable risk to those traveling on the highway or adjacent thereto."
 
 
 11
 On May 9, 1983, the district court entered an order providing "that the plaintiff's complaint is dismissed with prejudice." App. at 168. No opinion was filed, and the order contains no explanation of the ground of decision. Assuming that the appeal is properly before us, an issue we address in Part III infra, we must therefore consider whether under Pennsylvania law McGarr could recover against an owner of land abutting a highway for the maintenance on the land of an artificial or natural condition causing an unreasonable risk to travelers on the highway.
 
 II.
 The Pennsylvania Law
 
 12
 The Federal Tort Claims Act provides that the United States shall be liable "in the same manner and to the same extent as a private individual, under like circumstances." 28 U.S.C. Sec. 2674 (1982). The United States relies heavily on section 363 of the Restatement (Second) of Torts (1965), which provides:
 
 Natural Conditions
 
 13
 (1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.
 
 
 14
 (2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway.
 
 
 15
 Restatement (Second) of Torts Sec. 363 (1965). Comment b to that section provides that the phrase "natural condition of the land"
 
 
 16
 is used to indicate that the condition of land has not been changed by any act of a human being, whether the possessor or any of his predecessors in possession, or a third person dealing with the land either with or without the consent of the then possessor. It is also used to include the natural growth of trees, weeds, and other vegetation upon land not artificially made receptive to them. On the other hand, a structure erected upon land is a non-natural or artificial condition as are trees or plants planted or preserved, irrespective of whether they are harmful in themselves or become so only because of the subsequent operation of natural forces.
 
 
 17
 Restatement (Second) of Torts Sec. 363 comment b (1965).
 
 
 18
 The Pennsylvania Superior Court recently addressed the applicability in Pennsylvania of section 363. In Harvey v. Hansen, 299 Pa.Super. 474, 445 A.2d 1228 (1982), the court considered an automobile accident alleged to have been caused because the owner of property adjacent a public road "maintained his property 'in such a manner as to allow to exist thereon trees, bushes, shrubs, grasses and other plant growth' which obstructed the lateral view of appellant as she attempted to cross" the road. 299 Pa.Super. at 477, 445 A.2d at 1229. The road in question was plainly not in an urban environment. Relying on section 363, the trial court had dismissed the plaintiff's complaint, holding that "an owner of land owes no duty to persons ... to prevent visual obstruction caused by natural conditions on his land." Id. at 478, 445 A.2d at 1230 (footnote omitted). The Superior Court reversed on two grounds.
 
 
 19
 First, the court held, "[w]hether or not the condition on Hansen's property was natural or artificial was an issue of existing fact which should properly be decided at trial by a jury." Id. at 480, 445 A.2d at 1281. As we noted earlier, the amended complaint alleges a "condition which involved an unreasonable risk to those travelling on the highway ...." In pretrial submissions McGarr elaborated on this claim, arguing before the district court that "discovery may yet reveal the existence of an artificial condition such as grading, drainage course or shoring excavation so as to cause the muddy, slippery and dangerous conditions Plaintiff encountered while crossing the County Line Road Bridge." Under the pleading standard of Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), these assertions were ample to survive a motion to dismiss. The complaint's allegation of a "condition" involving unreasonable risk, and the subsequent specification referring to "artificial condition[s] such as grading, drainage course or shoring excavation," gave the United States "fair notice of what plaintiff's claim is and the grounds upon which it rests." Id. Pennsylvania law has long been clear that grading or excavation along a public road creating a dangerous condition on the road can be the subject of an action for negligence. McCarthy v. Ference, 358 Pa. 485, 494-96, 58 A.2d 49, 52-54 (1948) (road carved out of hillside created risk of rock falling); Gordon v. Pettey, 291 Pa. 258, 261-63, 139 A. 914, 915-16 (1927) (landfill caused landslide injuring property below); McKnight v. Denny, 198 Pa. 323, 325-26, 47 A. 970, 971-72 (1900) (per curiam) (owner of lot on slope of hill allowed dirt to fall upon land further down slope) (cited with approval in McCarthy ). Since McGarr could under his complaint attempt to prove an artificial condition, these cases alone require a reversal.
 
 Moreover, the Harvey court continued:
 
 20
 [W]e shall not remand on that basis alone.
 
 
 21
 The "natural condition" standard for imposing or not imposing liability creates the anomalous situation of imposing liability on a landowner who improves and maintains his property while precluding liability of a neighboring landowner who allows the "natural condition" of his property to run wild. Under this analysis, landowner A may plant hedges or bushes around the perimeter of his property and if they are allowed to become too thick or too tall so as to obstruct a motorist's vision of an intersection, he will be held liable. Landowner B, on the other hand, may neglect his property, allowing it to be overrun and overgrown with weeds, plants, grasses and other natural foilage, to an equal or greater detriment to passing motorists, but with no liability to himself. The distinction appears to be arbitrary at best.
 
 
 22
 299 Pa.Super. at 480-81, 445 A.2d at 1231.
 
 
 23
 Only one Pennsylvania decision, the Harvey court found, had followed the Restatement rule: the 1963 county court decision in Haldeman v. Mercer, 30 Pa. D. & C.2d 435 (1963). The Haldeman case, the Superior Court held,
 
 
 24
 which gave us the "natural v. artificial condition" analysis for determining a landowner's liability for obstructing the vision of passing motorists, was a 1963 Chester County case which was never appealed, which has never been followed, and which we now specifically reject.
 
 
 25
 299 Pa.Super. at 487, 445 A.2d at 1234.
 
 
 26
 Thus, as recently as 1982 the Pennsylvania Superior Court soundly rejected the "natural condition" doctrine of Restatement (Second) section 363. That case did not involve an urban setting, and did not pertain to exception (2) of section 363 concerning the "condition of trees." The government advances two arguments why the Harvey case should not control here with respect to natural conditions. First, the government maintains, Harvey applies only to visual obstructions. Br. at 11. There is no basis in the Harvey decision for this distinction. The court was plainly concerned with dangerous conditions on roadways caused by owners of adjacent land, and placed no emphasis whatsoever on the particular features of the danger.
 
 
 27
 Second, the government maintains that the 1948 decision of the Pennsylvania Supreme Court in McCarthy, supra, adopted section 363 of the Restatement, and must take precedence over the Superior Court's decision in Harvey. This argument fails as well. McCarthy addressed an "artificial condition" alone, in that case the cutting of a hillside to form a road. The McCarthy court rendered no holding on "natural conditions,"[1] a circumstance expressly recognized by the Pennsylvania Superior Court. See Barker v. Brown, 236 Pa.Super. 75, 79, 340 A.2d 566, 568 (1975). As the Superior Court has twice observed, no Pennsylvania appellate court has ever applied the "natural condition" doctrine. See Harvey, 299 Pa.Super. at 487, 445 A.2d at 1234; Barker, 236 Pa.Super. at 79, 340 A.2d at 568. Barker, the first Pennsylvania appellate decision to address that doctrine, repudiated it for property in urban settings, and cast doubt on whether the Restatement position would be followed generally in Pennsylvania:
 
 
 28
 Though few cases directly on point have been decided in other jurisdictions, it appears that most courts, when faced with these facts, have not opted to follow the Restatement view....
 
 
 29
 No citation of authority is necessary to support the proposition that the Restatement of Torts (1939) and the Restatement (Second) of Torts (1965) are highly regarded by Pennsylvania courts. But this does not mean that we will follow them blindly. They do not, of course, carry the weight of legislative enactments and we will not follow them where they conflict with our view of Pennsylvania's public policy.
 
 
 30
 Barker, 236 Pa.Super. at 79-80, 340 A.2d at 568-69. Although dicta in Barker suggested that the doctrine might continue to apply in rural settings,[2] that dicta was repudiated in Harvey. Thus, the suggestion that the natural-condition doctrine was adopted by the Pennsylvania Supreme Court has been rejected by Pennsylvania's own courts.[3]
 
 
 31
 Finally, the government urges that despite the position of the Barker and Harvey courts, we should forecast that the Pennsylvania Supreme Court would repudiate their holdings. See McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 661-63 (3d Cir.1980). To the contrary, as the Pennsylvania courts have acknowledged, the modern trend in the law is to reject the Restatement distinction. See Barker, 236 Pa.Super. at 79-80, 340 A.2d at 569. After canvassing at length the law of fourteen states and the District of Columbia, for example, the California Supreme Court sitting in banc recently concluded:The trend in the law is in the direction of imposing a duty of reasonable care upon the possessor of land with regard to natural conditions of land. The erosion of the doctrinal underpinning of the rule of nonliability is evident from even a cursory review of the case law. Also evident is the lack of congruence between the old common law rule of nonliability and the relevant factors which should determine whether a duty exists. All this leads to but one conclusion. The distinction between artificial and natural conditions should be rejected. "A [person's] life or limb [or property] does not become less worthy of protection by the law nor a loss less worthy of compensation under the law" because that person has been injured by a natural, as opposed to an artificial, condition.
 
 
 32
 Sprecher v. Adamson Cos., 30 Cal.3d 358, 636 P.2d 1121, 1128, 178 Cal.Rptr. 783 (1981) (in banc). Several jurisdictions, notably Oregon, simply regard the urban or rural setting as one more factor for consideration by the trier of fact. See Taylor v. Olsen, 282 Or. 343, 578 P.2d 779 (1978). Consequently, far from indicating that the Pennsylvania Supreme Court would repudiate the holdings of its lower courts, the trend in the law suggests that it would endorse them.
 
 
 33
 It seems evident, therefore, that if McGarr proves either an artificial or a natural condition on land owned by the United States which caused the allegedly dangerous condition he encountered on County Line Road, he may be able to recover from the United States as a landowner. Thus the trial court erred in dismissing the complaint on a Rule 12(b)(6) motion.
 
 III.
 The Government's Appeal
 
 34
 The United States contends, however, that this error should be disregarded because of a procedural default by McGarr, occurring after entry of the May 9, 1983 order. The docket entries disclose that an order was entered on that date and contain the notation "copies mailed." See Fed.R.Civ.P. 77(d). Counsel for McGarr apparently did not receive the notice of the entry of judgment, however, and on June 27, 1983, inquired of the district judge's law clerk about the status of the government's pending motion to dismiss. He was informed that a judgment dismissing with prejudice had been entered on May 9, 1983. Under the mistaken impression that he had only 30 days within which to file a notice of appeal, counsel wrote the following letter to the district judge on June 27, 1983, forwarding a photocopy to the Assistant United States Attorney handling the case:
 
 
 35
 I was informed today by your law clerk, Pat Ryan, Esquire, that an order had been issued in the above captioned matter on May 9, 1983, dismissing the Complaint. We have never received a copy of that Order and for obvious reasons, plaintiff is substantially prejudiced in not having received it.
 
 
 36
 I would greatly appreciate your reconsidering and issuing an appropriate Order or taking any other appropriate steps to preserve plaintiff's rights.
 
 
 37
 App. at 177.
 
 
 38
 As of June 27, 1983, McGarr's rights had not been prejudiced by the failure of communication to his counsel of the entry of the judgment; because the United States was a party to the action, the time for appeal was 60 days. Fed.R.App.P. 4(a)(1). Although the Assistant United States Attorney received the June 27 letter and was thus on notice that McGarr desired to pursue an appeal, she did not inform counsel for McGarr that he had until July 8, 1983 to file a notice of appeal.
 
 
 39
 On July 6, 1983, having received no response from the district court to the June 27, 1983 letter, counsel for McGarr addressed a second letter to the court, again sending a copy to the Assistant United States Attorney. The July 6 letter stated:
 
 
 40
 On June 27, 1983, I sent you a letter, a copy of which I am enclosing herewith, concerning an Order that your law clerk, Mr. Ryan, informed me issued on May 9, 1983, dismissing the Complaint in the above captioned matter.
 
 
 41
 To date we have not yet heard from you and I am quite concerned. We called your Chambers again today and Mr. Ryan tells us that it is the responsibility of your deputy to take care of these matters. While I am cognizant and appreciative of the internal division of responsibility in your Court, I am, however, concerned about my client's rights and would appreciate your attention to an Amended Order which would preserve our appeal rights.
 
 
 42
 Unfortunately, Mr. Ryan did tell us that you have had trouble recently with the Clerk's office in issuing copies of Orders and apparently this is another example.
 
 
 43
 App. at 178. As of July 6, 1978, a notice of appeal would still have been timely. Neither the court nor the Assistant United States Attorney informed McGarr's counsel that he could file the notice of appeal as late as July 8, 1983.
 
 
 44
 On July 12, 1983, four days after the expiration of the sixty day time for appeal, but well within the 30 day period specified in Fed.R.App.P. 4(a)(5) for filing a motion for an extension of time to file a notice of appeal, McGarr's counsel served and filed what he denominated as a Rule 60(b) motion seeking an amended order from which he could appeal. On September 15, 1983, the district court filed an amended order, vacating its May 9 order and again dismissing McGarr's complaint with prejudice. It is from the September 15, 1983 order that McGarr appeals.
 
 
 45
 The United States contends, and we agree, that Fed.R.Civ.P. 60(b) does not authorize the district courts to relax the time periods specified in Fed.R.App.P. 4 merely by vacating and refiling judgments. See West v. Keve, 721 F.2d 91, 96 (3d Cir.1983). We are also mindful, however, of the admonition in Fed.R.Civ.P. 1 that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." Thus, if the order which the district court entered is one which was within that court's power, and no prejudice can be shown from a mistaken reliance upon a wrong rule number, we should construe the pleadings so as to secure a just determination of this appeal.
 
 
 46
 Rule 4(a)(5) of the Federal Rules of Appellate Procedure provides:
 
 
 47
 The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a). Any such motion which is filed before the expiration of the prescribed time may be ex parte unless the court otherwise requires. Notice of any such motion which is filed after expiration of the prescribed time shall be given to the other parties in accordance with local rules. No such extension shall exceed 30 days past such prescribed time or 10 days from the date of entry of the order granting the motion, whichever occurs later.
 
 
 48
 Fed.R.App.P. 4(a)(5) (emphasis added). If the district court's September 15, 1983 order is treated as a Rule 4(a)(5) order, then the appeal is timely filed, for the notice of appeal was filed within ten days of its entry. See West v. Keve, 721 F.2d 91, 97 (3d Cir.1983). For several reasons it is clear that the order should be so treated.
 
 
 49
 Both the June 27 and July 6 letters to the district court sought in substance an extension of the time for appeal. The June 27 letter, for example, asked for "an appropriate Order or ... any other appropriate steps to preserve plaintiff's rights." App. at 177. Because both letters were received by the district court prior to the expiration of the 60 day period prescribed in Fed.R.App.P. 4(a)(1), they may reasonably be considered as ex parte applications for extension within the meaning of the second sentence in Rule 4(a)(5). Moreover, the July 12, 1983 motion, while designated by counsel as a Rule 60(b) motion, clearly indicated an intention to seek an extension such as is authorized by Rule 4(a)(5). In West v. Keve, 721 F.2d 91, 97 (3d Cir.1983), we acknowledged that in proper cases a pleading improperly labeled as a Rule 60(b) motion could be recast into a Rule 4(a)(5) motion. In that case the notice of appeal was still untimely. Here, however, we are faced with the scenario hypothesized in West v. Keve: a notice of appeal filed within ten days of an order providing for relief authorized by Rule 4(a)(5). 721 F.2d at 97.
 
 
 50
 The United States urges that even if the order is treated as one authorized by Rule 4(a)(5), it should nevertheless be reversed. Our review of a Rule 4(a)(5) determination is for abuse of discretion. See Chipser v. Kohlmeyer & Co., 600 F.2d 1061, 1063 (5th Cir.1979); Lowry v. Long Island R.R., 370 F.2d 911, 912 (2d Cir.1966). We have no reason to believe that in exercising its discretion to permit McGarr to appeal, the district court took into account factors which were not relevant under that rule. It is true that lack of notice of the entry of a judgment does not automatically authorize relief. See Harlan v. Graybar Elec. Co., 442 F.2d 425, 426 (9th Cir.1971) (per curiam); J. Moore, B. Ward & J. Lucas, Moore's Federal Practice p 204.13[1.--3], at 4-96 (2d ed. 1983); Fed.R.Civ.P. 77(d) (cross-referencing to the excusable-neglect standard of Fed.R.App.P. 4(a)(5)). But lack of such notice is certainly a factor in the excusable-neglect determination. Moreover, while counsel was under a mistaken impression as to the length of time for appeal in a case to which the United States is a party, it is also undisputed that well within that time counsel put both the district court and the United States on notice that his client desired to appeal. Since the United States received two notices of McGarr's intent to appeal within the time for filing of a notice of appeal, and a third notice within the 30 day period specified in Rule 4(a)(5), it can point to no prejudice arising from counsel's misdesignation of the rule which authorized the relief sought. And we cannot help but observe that the interests of justice would have been better served had counsel for the government obviated the problem by a timely telephone call to McGarr's counsel correcting his misapprehension as to the time for appeal in cases to which the United States is a party. In these circumstances, the district court's entry of an order granting relief authorized by Rule 4(a)(5) was not an abuse of discretion.
 
 III.
 Conclusion
 
 51
 We hold in No. 83-1729 that the court's order of September 15, 1983 was authorized by Fed.R.App.P. 4(a)(5) and was not an abuse of discretion. Thus the appeal from that order is timely. We hold in No. 83-1710 that the court erred in granting a Rule 12(b)(6) motion dismissing the complaint. Thus in No. 83-1729 the order appealed from will be affirmed insofar as it is construed as the grant of a Rule 4(a)(5) motion. The order in No. 83-1710 will be reversed insofar as it dismissed the complaint.
 
 HUNTER, Circuit Judge, concurring:
 
 52
 I join in holding that we have jurisdiction to hear McGarr's appeal. I also agree that the district court erred in dismissing McGarr's complaint under Fed.R.Civ.P. 12(b)(6). McGarr's allegation that the United States negligently or recklessly maintained an unreasonably dangerous condition on the land abutting County Line Road was sufficient to alert defendant to the nature of the claim against it. Through appropriate discovery, defendant will be able to ascertain the identity of the allegedly dangerous condition or conditions and to move for summary judgment as to any condition that will not support a tort claim as a matter of Pennsylvania law.
 
 
 53
 I cannot, however, join in predicting that the Pennsylvania Supreme Court would altogether repudiate the distinction between natural and artificial conditions on land. See Restatement (Second) of Torts Sec. 363(1) (1965). Section 363(1) shields a possesser of land from liability "for physical harm caused to others outside of the land by a natural condition on the land." Notwithstanding the prefatory language noted in the majority opinion at footnote one, I read the Pennsylvania Supreme Court's decision in McCarthy v. Ference, 358 Pa. 485, 495, 58 A.2d 49, 53 (1948), to embrace, albeit in dictum, the Restatement distinction between natural and artificial conditions on land as a matter of general Pennsylvania law.
 
 
 54
 The subsequent decisions of the Pennsylvania Superior Court discussed by the majority do not persuade me that the highest court in that state would retreat from the position endorsed in McCarthy. Barker v. Brown, 236 Pa.Super. 75, 340 A.2d 566 (1975), recognized the general applicability of section 363, but carved out an exception for "natural" conditions in urban settings. Harvey v. Hansen, 299 Pa.Super. 474, 445 A.2d 1228 (1982), involved the liability of a landowner for maintaining trees that allegedly obstructed the view of motorists. Such claims are subject to the "exception" set forth in Restatement (Second) of Torts Sec. 363(2) (1965) (see majority opinion supra, typescript at 5), and not to the general rule announced in section 363(1) and McCarthy. Indeed, the Harvey court never cited or discussed McCarthy; rather, it criticized and repudiated the holding of the Common Pleas court in Haldeman v. Mercer, 30 Pa. D. & C.2d 435 (1963), which applied the distinction between "artificial" and "natural" conditions on land to cases involving obstruction of a motorist's vision.
 
 
 55
 I am reluctant to extend the tort liability of rural landowners for injuries caused by natural conditions on their land. I am not persuaded that the highest court in Pennsylvania would be willing to do so. Accordingly, while I join in remanding this case to the district court, I would limit McGarr to proof of injuries caused by the negligent or reckless maintenance by the United States of artificial conditions, see Restatement (Second) of Torts Sec. 363 comment b (1965), on the land abutting County Line Road.
 
 
 
 *
 Hon. Walter K. Stapleton, United States District Judge for the District of Delaware, sitting by designation
 
 
 [1]
 Indeed, McCarthy's embrace of section 363, a dictum, is grudging at best. The court stated:
 It may be true, generally speaking, that a landowner is not subject to liability for bodily harm caused to others outside the land by a natural condition of the land, even though he recognizes or should recognize the natural condition involved a risk of such harm; (see Restatement, Torts, Sec. 363). Here, however, we are concerned with a happening that was caused, not by a natural, but by an artificial condition created by human agency, and which became harmful through the subsequent operation of natural forces.
 
 
 [358]
 Pa. at 495, 58 A.2d at 53 (emphasis in original). The government's assertion in its brief that "the Pennsylvania Supreme Court held that 'a landowner is not subject to liability for bodily harm caused to others outside his land by a natural condition of the land, even though he recognizes or should recognize the natural condition involved a risk of such harm," Br. at 10, omits the prefatory language, "It may be true, generally speaking," and neglects to note that this was a dictum and not a holding
 Hutchinson v. Montgomery Ward, 364 Pa. 126, 70 A.2d 838 (1950), also relied upon by the government, Br. at 10, is also an "artificial condition" case and makes no mention of section 363.
 
 
 [2]
 In dicta the court stated:
 It may very well be true that the distinction between artificial and natural conditions was valid in a time when landowners were possessed of, and hence would have been charged with the care of large quantities of land. It would still be valid today in rural areas where large landholdings are common. Under those circumstances, the time consumed and the expense involved in inspecting and repairing natural conditions would be unreasonably large compared to the danger involved. Pennsylvania is blessed with immense areas of farming and undeveloped land and we do not wish to place unrealistic burdens on its owners.
 
 
 [236]
 Pa.Super. at 80, 340 A.2d at 569
 
 
 [3]
 Although the concurrence notes that the Harvey court addressed Haldeman v. Mercer rather than McCarthy, Haldeman itself cited and relied upon McCarthy; indeed, McCarthy was the only case relied upon by the county court in Haldeman. See 30 Pa. D. & C.2d at 438-39. Thus, Harvey both concluded that McCarthy did not adopt the natural-condition doctrine and rejected that doctrine. And although the concurrence suggests that Harvey turned on exception (2) to section 363, the Harvey court expressly held that it was not relying on exception (2). 299 Pa.Super. at 479-80 n. 6, 445 A.2d at 1230-31 n. 6