718 F.2d 49
 83-2 USTC P 9611
 UNITED STATES of America, and Barbara Palm, Petitioners-Appellees,
v.
BEACON FEDERAL SAVINGS & LOAN, Respondent,
and
Charles Centrella and Teresa Centrella, Intervenors-Appellants.
UNITED STATES of America, and Barbara Palm, Petitioners-Appellees,
v.
NATIONAL BANK OF NORTH AMERICA, Respondent,
and
Charles Centrella and Teresa Centrella, Intervenors-Appellants.
UNITED STATES of America, and Barbara Palm, Petitioners-Appellees,
v.
VANGUARD NATIONAL BANK, Respondent,
and
Charles Centrella and Teresa Centrella, Intervenors-Appellants.
UNITED STATES of America, and Barbara Palm, Petitioners-Appellees,
v.
PERLOW & COMPANY and George Perlow, Respondents,
and
Charles Centrella and Teresa Centrella, Intervenors-Appellants.
 Nos. 540, 895 & 897, Dockets 82-6191, 82-6201, 82-6211 and 82-6221.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 5, 1983.
Decided Sept. 21, 1983.
 
 Libero Marinelli, Jr., Attorney, Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Charles E. Brookhard, Michael L. Paup, Attorneys, Tax Div., Dept. of Justice, Washington, D.C., Raymond J. Dearie, U.S. Atty., E.D.N.Y., Patrick B. Northup, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for petitioners-appellees.
 Jeffrey W. Waller, Melville, N.Y. (Jeffrey W. Waller, P.C., Melville, N.Y., of counsel) for intervenors-appellants.
 Before KEARSE, WINTER and PRATT, Circuit Judges.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 On these consolidated appeals Charles and Teresa Centrella (taxpayers) ask us to review orders of the district court enforcing four third-party summonses issued by the Internal Revenue Service under 26 U.S.C. Sec. 7602. Three of the summonses seek financial records from taxpayers' banks; the fourth, addressed to taxpayers' attorney-accountant, seeks copies of prior tax returns, work papers and supporting documents. Taxpayers claim that each summons is overbroad, that enforcement of the summons to the attorney-accountant is barred by the attorney-client privilege and the fifth amendment privilege against self-incrimination, and that enforcement of all four summonses should be denied because they are part of an investigation that was intensified as the result of an unconstitutional search and seizure by the revenue agent.
 
 
 2
 The district court ordered enforcement of all four summonses. In doing so, it expressly found that there had been no violation of any internal procedure of the IRS, it declined to receive evidence on the search and seizure issue, and it did not comment on the privilege issues. We agree with the district court's implicit holdings that the summonses were not overbroad, and that taxpayers failed to establish a basis for blanket relief under the fifth amendment and attorney-client privileges. Since the record is inadequate for us to rule on the fourth amendment violation, however, we reverse and remand for further proceedings on that issue.
 
 
 3
 As part of a routine civil audit of the Centrellas' 1978 income tax return, agent Jean Competello visited the office of George Perlow, the attorney-accountant who had prepared the return. Taxpayers apparently claim that when Perlow was absent from the room in which the examination of documents was conducted, Competello searched Perlow's papers without permission, removed a document (or documents) from his files, took it (them) from the office, and photocopied it (them). It is unclear what actually transpired during this investigation, because neither Competello nor Perlow, the only participants in the events, submitted an affidavit or testified below. All that is before the court is an affidavit by taxpayers' litigation attorney, plus unsworn statements made to the court by him and by the Assistant U.S. Attorney.
 
 
 4
 The government admits Competello took a single document from the room without giving a receipt, copied it, and returned it to Perlow. The government claims, however, that the document was included among a group of documents Perlow had provided to Competello for examination and that Competello had Perlow's permission to read it. However Competello got the document(s), it appears to be uncontested that the document(s) caused the IRS to expand its investigation from a routine civil audit of taxpayers' 1978 return, into a joint civil and criminal investigation of the 1977, 1978 and 1979 tax years, and to transfer the investigation to the supervision of special agent Barbara Palm, where it continued with a dual civil and criminal character.
 
 
 5
 On June 29, 1981, agent Palm served a third-party summons on Perlow, requesting his retained copies of taxpayers' 1977, 1978 and 1979 tax returns, prior years' returns, and "work papers, materials, and tax records" used in preparing those returns. Acting on taxpayers' instructions, Perlow refused to comply with the summons.
 
 
 6
 On November 5, 1981, agent Palm served summonses on three banks at which taxpayers held accounts, seeking records of their checking and savings accounts, safe deposit boxes, loan and credit card applications, and certificates of deposit. Taxpayers also directed the banks not to comply with the summonses.
 
 
 7
 Nearly six months later, on May 3, 1982, the government petitioned the district court under 26 U.S.C. Secs. 7402(b) and 7604 to enforce the summonses. Taxpayers intervened pursuant to Fed.R.Civ.P. 24(a)(1) and 26 U.S.C. Sec. 7609(b), and resisted enforcement on the grounds that (1) the IRS issued the summonses for a bad faith purpose solely in furtherance of a criminal investigation; (2) the summonses were overbroad; (3) enforcement was barred by the fourth amendment's prohibition against unreasonable searches and seizures; and (4) with respect to the summons issued to Perlow, enforcement was barred by the attorney-client privilege and by the fifth amendment privilege against self-incrimination.
 
 
 8
 When the matter first came on before the district court it was handled somewhat informally. The district court did not require the taxpayers to make a substantial showing of governmental misconduct before it agreed to schedule a hearing to determine whether the IRS had recommended criminal tax proceedings, why the IRS had delayed so long in bringing enforcement proceedings, and the circumstances surrounding removal of the document(s) from Perlow's office.
 
 
 9
 At the subsequent evidentiary hearing, the government had two witnesses available: agent Palm, who was to testify concerning the IRS's institutional posture; and agent Competello, who was to testify concerning the events surrounding the taking of the document(s). After the court asked the government to show that the IRS had acted in accordance with its internal procedures, and to prove that the summonses were issued in good faith pursuit of statutory purposes, agent Palm testified. When her cross-examination was concluded, the government did not call agent Competello to testify, but instead rested and moved for the orders of enforcement, arguing that Palm's testimony established that the summons had been "issued in good faith for a legitimate purpose for records not in our control," that there had not yet been any determination as to whether the taxpayers owed any money, and that it was conducting "a joint [civil and criminal] investigation which is appropriate."
 
 
 10
 Taxpayers' attorney argued in substance that the court should look behind the government's internal procedures to determine whether a violation of taxpayers' fourth amendment or fifth amendment rights had led to issuance of the summonses. The government's attorney responded that if
 
 
 11
 there was some activity prior to the issuance of the summons that resulted in a violation of the taxpayer's rights * * * they can bring it up at a suppression hearing in the event there is a criminal procedure. But it's not relevant to the motion before the court whether the summonses can be enforced.
 
 
 12
 At that point the court announced its decision:
 
 
 13
 Mr. Waller, the court is going to grant the Government's application and the taxpayer--I mean, the respondent is ordered to comply and the court will sign an order to that effect.
 
 
 14
 I find no violation of any internal procedure at this point.
 
 
 15
 Taxpayers' attorney requested "to produce my own witnesses as to what the government's actions were," but the court denied the request and later signed the enforcement orders. We have stayed their enforcement pending this appeal.
 
 
 16
 As a result of the manner in which these proceedings were handled, we have on this appeal an incomplete record that lacks both competent affidavits and oral testimony as to the facts underlying the claimed constitutional violation. While the district court did not articulate its reasons for enforcing the summonses, a fair reading of the papers and proceedings below indicates that the court accepted the government's argument that it would be sufficient to address any underlying constitutional infringements in subsequent proceedings should criminal prosecutions be instituted. Thus, by foreclosing testimony about the claimed unreasonable search and seizure, and by ordering enforcement based solely on agent Palm's testimony as to the IRS's "institutional posture", the district court necessarily found any possible fourth amendment violation to be irrelevant to the question of whether the summonses should be enforced.
 
 DISCUSSION
 
 17
 Except for the fourth amendment issue, we have no difficulty with the district court's action. In United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the Supreme Court held that to enforce an IRS summons, the government must make a preliminary showing that
 
 
 18
 the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the code have been followed--in particular, that the "Secretary or his delegate," after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect.
 
 
 19
 Id. at 57-58, 85 S.Ct. at 254-255. In subsequent cases, the Court has added requirements that the IRS issue the summons before it makes a recommendation to the Department of Justice for criminal prosecution, Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); see 26 U.S.C. Sec. 7602(c), enacted September 3, 1982, and that the IRS not have abandoned, in an institutional sense, "pursuit of civil tax determination or collection." United States v. LaSalle National Bank, 437 U.S. 298, 318, 98 S.Ct. 2357, 2368, 57 L.Ed.2d 221 (1978). However,
 
 
 20
 These requirements are not intended to be exclusive. Future cases may well reveal the need to prevent other forms of agency abuse of congressional authority and judicial process.
 
 
 21
 Id. at 318 n. 20, 98 S.Ct. at 2368 n. 20.
 
 
 22
 Once the government makes a sufficient preliminary showing for enforcement, the burden shifts to the taxpayer to disprove one of the four Powell criteria, or to demonstrate that judicial enforcement should be denied on the ground that it would be "an abuse of the court's process," United States v. Davey, 543 F.2d 996, 1000 (2d Cir.1976); see United States v. Powell, 379 U.S. at 58, 85 S.Ct. at 255; United States v. Davis, 636 F.2d 1028, 1034 (5th Cir.), cert. denied, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981), or "on any appropriate ground," United States v. Powell, 379 U.S. at 58, 85 S.Ct. at 255, quoting Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964).
 
 
 23
 Agent Palm's testimony, which was substantially undisputed, sufficiently established compliance with the Powell requirements: the IRS's investigation of the taxpayers was pursuant to the legitimate purpose of ascertaining their tax liability for the years 1977, 1978 and 1979; the documents summoned were relevant to that purpose; the requests were not overbroad, because the IRS was using an indirect expenditure and deposit analysis; the IRS did not already have the information sought; and the administrative steps required by the code had been followed. Agent Palm also testified that there had not yet been any recommendation to the Department of Justice for criminal prosecution. The fact that the IRS was contemplating possible criminal prosecution does not render its purpose improper, because it is clear from agent Palm's testimony that the IRS was also investigating taxpayers' civil tax liability. United States v. LaSalle National Bank, supra.
 
 
 24
 We turn then to the fourth amendment problem. To begin, we note that taxpayers have mischaracterized the question by treating it as an evidentiary issue, for they argue that the exclusionary rule applies in a proceeding to enforce an IRS third-party summons. The issue, however, is not whether evidence should be excluded from the fact finder's consideration in this statutory enforcement proceeding; instead, the issue is whether an agent's unconstitutional search and seizure should bar the IRS from receiving the court's aid in enforcing a summons issued to assist an investigation that was intensified as the result of the information unconstitutionally obtained by the agent.
 
 
 25
 As indicated earlier, all of the requirements specifically enumerated in LaSalle and its predecessors, Donaldson and Powell, have been established. The narrow issue, therefore, is whether judicial enforcement of an IRS summons issued as the result of a fourth amendment violation might constitute one of the "other forms of agency abuse of * * * judicial process", LaSalle, supra, 437 U.S. at 318 n. 20, 98 S.Ct. at 2368 n. 20, that would require denial of the petition.
 
 
 26
 To affirm these enforcement orders we would have to accept what we perceive to be the district court's unspoken premises: that a fourth amendment violation leading to issuance of the summonses is irrelevant at the enforcement stage, and that a suppression hearing in any criminal proceeding that might later result would be adequate protection against any unconstitutional action by the agency. We do not accept either of those premises.
 
 
 27
 First, like all other governmental agencies, the IRS must obey the constitution. Whether its enforcement objective is civil or criminal, or both, its agents should not use means that infringe the prohibitions of the fourth amendment against unreasonable searches and seizures of a citizen's papers. By granting enforcement to a summons that resulted from an unconstitutional search, the court would be furthering the effects of, if not actually encouraging, unconstitutional conduct.
 
 
 28
 Second, assuming that an unconstitutional search and seizure did cause the IRS to issue these third-party summonses, suppression of evidence in a subsequent criminal proceeding would not be an adequate remedy, for the taxpayer might still be prosecuted civilly as the result of the unconstitutional search. See United States v. Janis, 428 U.S. 433, 456 n. 31, 96 S.Ct. 3021, 3033 n. 31, 49 L.Ed.2d 1046 (1976); Tirado v. Commissioner of Internal Revenue, 689 F.2d 307 (2d Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983).
 
 
 29
 Third, granting enforcement and leaving the taxpayer to a subsequent suppression motion could create later problems for the district court when it was called upon to determine whether the IRS had an independent source for the summoned evidence and whether the impact of the unconstitutional search and seizure was sufficiently attenuated by the time of trial to purge particular items of evidence from the unconstitutional taint.
 
 
 30
 Fourth, in a criminal proceeding against them, the taxpayers might not have standing to allege a violation of their attorney's fourth amendment rights. United States v. Payner, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980) (client lacks standing to challenge search of his banker's briefcase from which client's document was seized); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). On the other hand, the very purpose of Sec. 7609, the provision under which taxpayers intervened in these proceedings, is to put the taxpayer "in the shoes of the third party record keeper." United States v. Horton, 452 F.Supp. 472, 476 (C.D.Cal.1978), aff'd, 629 F.2d 577 (9th Cir.1980) (holding that statute does not broaden the standards for quashing summons). Congress intended the intervention procedure to confer on the taxpayer standing to assert the record keeper's rights vis-a-vis the summons. This purpose is evident not only in the statute's language, which consistently provides for the intervenor's rights "notwithstanding any other law or rule of law " (emphasis added), but also in its legislative history. See S.Rep. No. 938, 94th Cong., 2d Sess. 368-69 (1976), reprinted in 1976 U.S.Code Cong. & Ad.News 2897, 3439, 3798 ("While the third-party witness also has this right of challenge, even under present law, the interest of the third-party witness in protecting the privacy of the records in question is frequently far less intense than that of the person to whom the records pertain."); id., at 370, 1976 U.S.Code Cong. & Ad.News at 3799-800 ("In addition, the committee intends that the noticee would have standing to raise other issues which could be asserted by the third-party record keeper, such as asserting that the summons is ambiguous, vague, or otherwise deficient in describing the material requested, or that the material requested is not relevant to a lawful investigation. In other words, the committee intends that the noticee will be allowed to stand in the shoes of the third-party record keeper and assert certain defenses to enforcement which witnesses are traditionally allowed to claim, but which may not be available to intervenors (under many court decisions) on ground of standing."). The House adopted the Senate version of the bill. S.Rep. No. 938--Pt. II, 94th Cong., 2d Sess. 486 (1976), reprinted in 1976 U.S.Code Cong. & Ad.News 4030, at 4190. Thus, recent judicial contraction of fourth amendment standing in criminal cases such as Payner supports intervenors' right to press their claim in a proceeding to quash, for the purpose of Sec. 7609 is to enable them to avoid the standing problem. Relegating their claim to adjudication in a subsequent criminal prosecution against them would frustrate this statutory objective.
 
 
 31
 Fifth, "[t]he Supreme Court has made it plain that the principal, if not the only, justification for excluding illegally seized evidence from governmental proceedings is to deter future governmental conduct." Tirado v. Commissioner of Internal Revenue, 689 F.2d at 309. Such deterrence would be promoted by denying enforcement to an IRS summons if it resulted from an agent's unconstitutional search. Denial of enforcement would deprive the agent of a significant means for investigating and determining the taxpayer's liability, and in many cases it would, as a practical matter, terminate the investigation. Faced with possible loss of such a valuable investigatory tool, agents would be more inclined to avoid constitutional violations in conducting their audits.
 
 
 32
 Finally, the problem is not entirely evidentiary. As recognized by Judge Weinstein in United States v. Schipani, 289 F.Supp. 43, 63 (E.D.N.Y.1968), aff'd, 414 F.2d 1262 (2d Cir.1969), cert. denied, 397 U.S. 922, 90 S.Ct. 902, 25 L.Ed.2d 102 (1970), "[o]nce the government begins to concentrate all its enormous resources on a citizen, the chance of its discovering that he has violated the tax laws is greatly multiplied." Further, the burden on a taxpayer of being tied up in an audit that may continue for months, if not years, and may or may not culminate in further civil or criminal proceedings, should not be underestimated. Consequently, unless the court, on a proper showing and in a proper case, may inquire into a claimed fourth amendment violation at the time of the enforcement proceeding, the IRS may benefit from its own unconstitutional conduct, the court may unwittingly aggravate the consequences of an unconstitutional search and seizure, and the taxpayer may suffer from the unconstitutional conduct in ways that cannot later be remedied.
 
 
 33
 In short, we are not prepared to assume, as did the district court, that the IRS is entitled to enforcement of its summonses regardless of the nature, extent and effect of the claimed unconstitutional search and seizure. At the same time, we hesitate to attempt to define what particular consequences should flow from hypothetical violations of the fourth amendment. Without a clearer fact picture it is impossible to determine whether enforcement of even these summonses should be granted, whether it should be restricted in some manner, or whether it should be denied entirely.
 
 
 34
 This is not to say, however, that every claimed fourth amendment violation requires a full factual inquiry with the resulting delay of IRS investigations. When it enacted the provisions of Sec. 7609(b), which permit a taxpayer who is the target of a summons directed to a third-party recordkeeper to intervene in the summons enforcement proceedings, Congress did not intend "to so delay tax investigations by the Service that they produce a problem for sound tax administration greater than the one they seek to solve." H.R.Rep. No. 94-968, 94th Cong., 2d Sess. 308, reprinted in 1976 U.S.Code Cong. and Ad.News 2897, 3205. To avoid unnecessary delay a "heavy" burden, LaSalle, supra, 437 U.S. at 316, 98 S.Ct. at 2367, is placed on the taxpayer to make a "substantial preliminary showing" of some abuse before discovery or an evidentiary hearing will be ordered. United States v. Morgan Guaranty Trust Co., 572 F.2d 36, 42 n. 9 (2d Cir.), cert. denied, 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978).
 
 
 35
 When this matter was first heard below, the district court would have been justified in rejecting taxpayers' claim summarily because it was supported only by the hearsay affidavit of an attorney. While it was not required to call for a hearing, the district court did not err in doing so, particularly since the declaration submitted by agent Palm in support of the U.S. Attorney's petition to enforce the summonses lacked some of the information required by Powell, Donaldson, and LaSalle. However, because the district court erred at the hearing by rejecting, as a matter of law, a fourth amendment defense to a summons enforcement proceeding, we must reverse and remand.
 
 
 36
 Even now, however, we do not necessarily require the district court to hold an evidentiary hearing. Instead, we leave the matter to the discretion of the court as to whether a hearing should be held forthwith, or whether it should first require a "substantial preliminary showing" by affidavit or other documentary evidence so as to determine whether an evidentiary hearing is necessary for disposition of the fourth amendment claim. In its discretion the district court could, of course, dispense with the preliminary paper work and hold a hearing forthwith so as to ascertain the critical facts from the oral testimony of Perlow and Competello and possibly others.
 
 
 37
 The orders are therefore reversed and the cases are remanded to the district court for further proceedings on the fourth amendment issue.