Paul GLUCK and Ina Gluck,
Appellants,

v.

UNITED STATES of America, Appellee.

Sidney STEIN; Stein & Stein; Stein's Foot Specialties, Inc., Appellee,

v.

UNITED STATES of America,
Appellant.

Nos. 84–5323, 84–5282.

United States Court of Appeals,
Third Circuit.

Argued Feb. 12, 1985.
Decided Aug. 28, 1985.

Carl B. Levy (argued), Joseph G. Aronson, Livingston, N.J., for appellants in No. 84–5282.

Bruce Goldman (argued), Edwin Fradkin, John J. O'Toole, Starr, Weinberg & Fradkin, Roseland, N.J., for appellee in No. 84–5323.

W. Hunt Dumont, U.S. Atty., Newark, N.J., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Charles E. Brookhart, William A. Whitledge (argued), Attys. Tax Div., U.S. Dept. of Justice, Washington, D.C., for appellee in No. 84–5282, and appellant in No. 84–5323.

Before GARTH, BECKER and ROSENN, Circuit Judges.

## OPINION OF THE COURT

EDWARD R. BECKER, Circuit Judge.

These consolidated appeals present the question whether certain Internal Revenue Service summonses should be quashed because they resulted from grand jury information obtained by reason of a district court's Fed.R.Crim.P. 6(e) order that would now be invalid under *United States v. Baggot,* 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983). We hold that they should not.

## I. FACTS AND PROCEDURAL HISTORY

A. *United States v. Gluck,* No. 84–5282

At some time prior to November 1983, a federal grand jury sitting in the District of New Jersey conducted an investigation into the affairs of Franklin State Bank. During the course of this investigation, the grand jury examined records of bank accounts maintained by appellants Paul and Ina Gluck, among others. At the conclusion of the grand jury inquiry, the United States Attorney for the District of New Jersey, acting pursuant to Fed.R.Crim.P. 6(e)(3)(C)(i),[1] moved *ex parte* in the district court for an order authorizing disclosure to the Internal Revenue Service ("IRS" or "Service") of matters occurring before the grand jury for IRS use in calculating civil tax liabilities of the Glucks and others. On November 19, 1982, the court granted this

---

1. Fed.R.Crim.P. 6(e) states, in pertinent part:

   (2) General Rule of Secrecy. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

   (3) Exceptions.

   . . . .

   (C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

   (i) when so directed by a court preliminarily to or in connection with a judicial proceeding;

   . . . .

   (D) A petition for disclosure pursuant to subdivision (e)(3)(C)(i) shall be filed in the district where the grand jury convened. Unless the hearing is ex parte, which it may be when the petitioner is the government, the petitioner shall serve written notice of the petition upon (i) the attorney for the government, (ii) the parties to the judicial proceeding if disclosure is sought in connection with such a proceeding, and (iii) such other persons as the court may direct. The court shall afford those persons a reasonable opportunity to appear and be heard.

motion. The IRS thereupon used information obtained from the grand jury materials as the basis for summonses to Franklin State Bank and First National State Bank-Edison in April 1983 seeking records necessary to determine the Gluck's tax liability for the tax years 1979–81.

As required by 26 U.S.C. §§ 7609(a), (c) (1982), the IRS notified the Glucks of the summonses, and they responded by filing, pursuant to 26 U.S.C. § 7609(b), motions to quash the summonses in the United States District Court for the District of New Jersey. The IRS countered with a motion for summary enforcement. The Glucks argued that the Supreme Court's decision in *United States v. Baggot*, 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983), filed after entry of the *ex parte* 6(e) order, retroactively invalidated that order, and that the summonses should therefore be quashed as the fruit of information impermissibly obtained in violation of grand jury secrecy. On December 19, 1983, the district court denied the Gluck's motion to quash the summonses and granted the IRS's motion for summary enforcement. On December 29, the Glucks moved for reconsideration and a stay pending appeal. The district court denied these motions on April 5, 1984, and the Glucks filed the present appeal on April 23.[2] Shortly thereafter, the banks complied with the summonses by turning the requested documents over to the IRS.

### B. *Stein v. United States*, No. 84–5323

The Rule 6(e) order entered by the United States District Court for the District of New Jersey on November 19, 1982, also led the IRS to information concerning the tax liabilities of appellants in No. 84–5323, Sidney Stein, Stein and Stein (a corporation), and Stein's Foot Specialities (a partnership) (hereinafter collectively referred to as "the Steins"). Using this information, the IRS issued summonses to Franklin State Bank on April 13, 1983, seeking bank records necessary to calculate the amount of taxes allegedly owned by the Steins for the 1981 tax year. On April 27, the Steins filed, pursuant to 26 U.S.C. § 7609(b), a motion to quash the summonses in the district court, and the IRS responded with a motion for summary enforcement. Like the Glucks, the Steins' primary argument in support of their motion to quash was the alleged retroactive effect of *Baggot*. The district court denied the Steins' motion to quash and granted the IRS's motion for summary enforcement on November 18, 1983. The Steins moved for reconsideration, and on March 14, 1984, the district court reversed its earlier judgment, holding that *Baggot* should be applied retroactively to invalidate summonses that are the result of information improperly obtained from grand jury materials. Accordingly, the court ordered that the summonses to the Franklin State Bank be quashed. The IRS appeals.

---

2. The Glucks styled their motion for reconsideration as one under Fed.R.Civ.P. 60(b). If treated as such, we would be forced to conclude that the Glucks' appeal from the district court's decision on the merits was untimely, because their notice of appeal was filed more than 60 days after the entry of judgment on the merits, and a rule 60(b) motion does not toll the running of time for the filing of an appeal. *See* Fed.R. App.P. 4(a). However, the Glucks served their motion to reconsider within 10 days of the judgment, which is the time period alloted for the service of a motion under Fed.R.Civ.P. 59(e) to alter or amend. A Rule 59(e) motion tolls the time for appeal until a judgment on the motion is entered. *See* Fed.R.App.P. 4(a).

In *McGarr v. United States*, 736 F.2d 912, 918–19 (3d Cir.1984), we faced a similar situation. The appellant had filed a Rule 60(b) motion to extend the time for the filing of a notice of appeal,

which is unauthorized by Rule 4(a) and was expressly foreclosed by this court in *West v. Keve*, 721 F.2d 91, 96 (3d Cir.1983). The motion was filed, however, within the time period prescribed by Rule 4(a)(5) for a motion to extend the time for an appeal. We noted that Fed.R. Civ.P. 1 directs courts to construe the rules of civil procedure "to secure the just, speedy, and inexpensive determination of every action," and thus we treated the Rule 60(b) motion as one properly filed under Rule 4(a)(5). *McGarr*, 736 F.2d at 918–19.

We believe that similar action is called for here. We will treat the Glucks' Rule 60(b) motion as a Rule 59(e) motion. Considered as such, the Glucks' request for reconsideration of the judgment tolled the running of the time for appeal until April 5, 1984, when that request was denied. The notice of appeal of April 23 was thus timely filed.

## II. MOOTNESS OF UNITED STATES V. GLUCK, NO. 84-5282

In the *Gluck* matter, after the district court refused to quash the summonses or to stay the execution of its judgment pending appeal, Franklin State Bank fully complied with the summonses. Relying on *Vesco v. Securities and Exchange Commission*, 462 F.2d 1350 (3d Cir.1972), the IRS argues that this action ended any controversy between the parties and mooted the Glucks' appeal because the relief sought—prevention of compliance with the summonses—can no longer be granted. The Glucks respond that their appeal is not moot because this court can prevent the IRS from using information obtained as a result of summonses that should have been quashed.

The Glucks cite two cases from this circuit in support of their position. The first is *United States v. Waltman*, 525 F.2d 371 (3d Cir.1975), which concerned the contents of a diary characterized by the government as a corporate record with no fifth amendment protection, but claimed by the taxpayer to be a personal item privileged from disclosure. The district court ordered the diary produced and denied a stay pending appeal. Although the taxpayer surrendered the diary while the case was on appeal, this court held that the case was not moot, stating:

> Because a stay was denied, the diary was produced. However, the case is not moot since if the diary is not a corporate record, the individual respondent is entitled to its return and appropriate suppression of the use of its contents.

*Id.* at 373 n. 1.

The other case relied on by the Glucks is *United States v. Friedman*, 532 F.2d 928 (3rd Cir.1976), which also addressed the effect of compliance with an IRS summons during the pendency of an appeal challenging its validity. As in *Waltman*, this court denied the IRS's motion to dismiss the appeal as moot "because the controversy between the IRS and the taxpayers over these records [was] still very much alive." *Id.* at 931. We stated:

> If the taxpayers were to prevail in their contention that all summonses were illegal because they were issued solely to gather evidence for use in a criminal prosecution, then the records ... would have been obtained unlawfully. Such a ruling could affect the possible use of these records in any subsequent criminal or civil proceeding brought against the taxpayers.

*Id.*

The IRS concedes that both *Waltman* and *Friedman* are squarely on point and strongly supportive of the Glucks' position. The Service contends, however, that these cases are at odds with *Vesco* and that, as the earlier case, *Vesco* is controlling. The IRS is correct in its contention that *Vesco* —if at odds with *Waltman* and *Friedman* —would, as the case decided earliest in time, be the controlling authority in this circuit and that the later cases would be ineffective to the extent of the conflict. *See O. Hommel Co. v. Ferro Corp.*, 659 F.2d 340, 354 (3d Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1711, 72 L.Ed.2d 134 (1982) ("[A] panel of this court cannot overrule a prior panel precedent.... To the extent that [the later case] is inconsistent with [the earlier case, the later case] must be deemed without effect.") We believe, however, that *Vesco* is distinguishable from *Waltman*, *Friedman*, and the case at bar.

In *Vesco*, the plaintiffs resisted compliance with an SEC subpoena requiring disclosure of certain documents on the ground that such disclosure would subject them to criminal penalties under Swiss banking law. After losing in the district court, plaintiffs appealed, but surrendered the documents while the appeal was pending. We held that "plaintiffs' full compliance with the subpoena ... obviated the 'case or controversy' originally surrounding the subpoena," 462 F.2d at 1351, and dismissed the appeal as moot.

There is an essential difference between *Vesco* and the later cases. In *Vesco*, the very act of surrendering the documents was the critical issue because, it was al-

leged, that act gave rise to criminal liability under Swiss bank secrecy law. Once the plaintiffs had complied with the subpoena, no judgment of this court could absolve Vesco of any such liability or prevent action by the Swiss authorities. Thus, even if we had decided in the plaintiffs' favor, we could have fashioned no remedy to afford them effective relief; any decision, therefore, would have been purely advisory. In contrast, in *Waltman, Friedman,* and the present case, at issue is not only the act of turning the documents over to the government but also the use of information obtained from these documents. Thus, the surrendering of the documents to the IRS does not end the controversy between the parties because, if we find that the summonses were illegal, we can still fashion a remedy—prohibition of the use of the summoned documents—to afford the Glucks effective relief. We hold, therefore, that the appeal in No. 84–5282 is not moot.[3] Accordingly, we turn to the merits of that appeal as well as of No. 84–5323.

## III. DISCUSSION

### A. *The Applicable Law*

■ In *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the Supreme Court set forth the test to be applied in determining the validity of an IRS summons that is challenged by a taxpayer. First, the IRS Commissioner has the burden of showing "that the investigation will be conducted pursuant to a legit-

imate purpose, that the inquiry may be relevant to that purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed...." *Id.* 85 S.Ct. at 255. Once the Commissioner has met this burden, the taxpayer "may challenge the summons on any appropriate ground," *Reisman v. Caplin,* 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964). One ground upon which a taxpayer may challenge an IRS summons is that enforcement of the summons would amount to an abuse of the court's process. The burden of proving such abuse is on the taxpayer. *Powell,* 379 U.S. at 58, 85 S.Ct. at 255; *see Donaldson v. United States,* 400 U.S. 517, 526–27, 91 S.Ct. 534, 540–41, 27 L.Ed.2d 580 (1971); *United States v. McCarthy,* 514 F.2d 368, 373 (3d Cir.1975).

There is no dispute in the cases at bar that the IRS has met its preliminary burden for securing enforcement of the summonses under *Powell.* The issue before us is whether enforcement would result in an abuse of process. The IRS, of course, argues that it would not. Moreover, the Service contends that the case may be disposed of on preliminary grounds without reaching the abuse of process question. We address these threshold issues next.

### B. *Threshold Issues*

■ The IRS characterizes this case as one in which the taxpayers collaterally at-

---

**3.** We note that this holding perpetuates the conflict between this court and most other courts of appeals that have considered the issue. *See United States v. Kis,* 658 F.2d 526, 532–35 (7th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982); *United States v. Patmon,* 630 F.2d 458, 459 (6th Cir.1980); *United States v. Arthur Andersen & Co.,* 623 F.2d 720, 722 (1st Cir.), *cert. denied,* 449 U.S. 1021, 101 S.Ct. 588, 66 L.Ed.2d 483 (1980); *United States v. Deak-Perera Banking Corp.,* 610 F.2d 89 (2d Cir.1979); *United States v. First National Bank,* 587 F.2d 909, 910 (8th Cir.1978); *Barney v. United States,* 568 F.2d 116, 117 (8th Cir. 1978); *Kurshan v. Riley,* 484 F.2d 952 (4th Cir. 1973); *United States v. Lyons,* 442 F.2d 1144, 1145 (1st Cir.1971); *Lawhon v. United States,* 390 F.2d 663 (5th Cir.1968).

It appears that some of these courts would nevertheless hold that this case is not moot given that compliance with the summons was carried out by someone other than the appellant, i.e., the bank. These courts distinguish between cases in which the summons is issued to the taxpayer/appellant and those in which it is issued to a third party where the taxpayer has intervened. They reason that it is unreasonable to expect a disinterested third party to resist a summons and risk contempt of court in order to keep a controversy live; thus they hold that compliance by the third party does not moot the appeal. *See United States v. Kis,* 658 F.2d at 534; *United States v. Arthur Andersen & Co.,* 623 F.2d at 723–24.

tack a Rule 6(e) order and move for the suppression of evidence obtained as a result of that order. So viewing the case, the Service makes three preliminary arguments for which it is willing to assume the invalidity of the Rule 6(e) order that led to the summonses at issue. First, the IRS contends that the cases are moot because this court cannot fashion any remedy that would restore the sanctity of the grand jury materials. Second, the IRS argues that the taxpayers had no standing to challenge the Rule 6(e) order when it was originally entered, and thus have no standing to attack it in a collateral proceeding. Finally, the Service claims that suppression of evidence is not available in a summons enforcement proceeding.

These contentions are without merit. First, the cases are not moot because they raise not only the issue of grand jury secrecy—which, admittedly, cannot be restored—but also the question whether materials allegedly obtained in violation of this secrecy may be used as the basis for IRS summonses. The controversy between the parties over this latter question is very much alive. Second, on the issue of standing, there can be no doubt, after *Powell*, that the Glucks and Steins have standing to challenge the IRS summonses on the ground that enforcement would result in an abuse of the court's process. The fact that they are basing their claim of abuse of process on the alleged invalidity of a Rule 6(e) order (and the impermissible taint it is said to impart to the summonses) does not affect their standing in the summons enforcement proceeding.[4]

Finally, the Service's contention that suppression of evidence is not available in a summons enforcement proceeding stems from a mischaracterization of the case. The taxpayers do not argue that the district court should have applied the exclusionary rule and suppressed evidence prior to consideration of the validity of the challenged summonses. Rather, they are arguing that the alleged breach of grand jury secrecy by IRS agents should bar the IRS from receiving the court's aid in enforcing summonses issued to assist an investigation triggered by the information improperly obtained from the grand jury. *See United States v. Beacon Federal Savings & Loan*, 718 F.2d 49, 52–53 (2d Cir.1983). The quashing of summonses, not the suppression of evidence, is the remedy sought by the appellants here.[5]

Having disposed of these preliminary matters, we may now turn to the question whether the action by the IRS agents in the cases at bar renders enforcement of the summonses an abuse of process.

### C. *Would enforcement of the summonses constitute abuse of process?*

The initial issue relevant to determining whether the summonses are enforceable is the retroactivity of the Supreme Court's decision in *United States v. Baggot*, 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983). The parties agree that, if *Baggot* is not subject to retroactive application, the summonses are enforceable because the Rule 6(e) order leading to them would be valid and no illegal conduct would underlay the IRS's investigation of the taxpayers. *See supra* part III.A.

---

**4.** We note our reservation about correctness of the government's contention that a person who may be injured by a Rule 6(e) order is without standing contemporaneously to oppose it. Rule 6(e)(3)(D) states that a petition for disclosure under the rule "may" be *ex parte* when the petitioner is the government. *See supra* note 1 (text of rule). A court has the discretion, however, to afford any and all persons potentially affected by the disclosure of grand jury materials a reasonable opportunity to appear and be heard. *See* Fed.R.Crim.P. 6(e)(3)(D) advisory committee note. Indeed, this is a not uncommon practice. *See, e.g., United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 3137, 77 L.Ed.2d 743 (1983). However, we need not decide the Rule 6(e) standing question here.

**5.** We note, however, the functional similarity between the quashing ession of evidence based on illegal police conduct.

Because of this similarity, cases involving the exclusionary rule provide some guidance for determining when a summons should be quashed. *See infra* part III.C.

The *Baggot* Court addressed the question whether "an Internal Revenue Service investigation to determine a taxpayer's civil tax liability is 'preliminar[y] to or in connection with a judicial proceeding' within the meaning of [Fed.R.Crim.P. 6(e)(3)(C)(i) ]." *Id.* at 3165; *see supra* note 1 (text of rule). In that case, as in the cases presently before us, the IRS had obtained, on the basis of Rule 6(e)(3)(C)(i), an order from a district court at the close of a grand jury investigation that permitted the Service to use grand jury materials to determine civil tax liabilities. The Court held in *Baggot* that "disclosure [of grand jury information] is not appropriate for use in an IRS audit of civil tax liability, because the purpose of the audit is not to prepare for or conduct litigation, but to assess the amount of tax liability through administrative channels." *Id.* at 3167.

We believe that the question of the retroactive effect of *Baggot* is not a simple one; in any event, we need not answer the question here. Because we hold in favor of the government on other grounds, *see infra* at 758, we will assume without deciding that *Baggot* must be applied retroactively.[6] Two corollaries follow from this assumption: (1) the Rule 6(e) order under attack in these appeals was invalid when issued; and (2) the IRS agents who initiated the investigation of both the Glucks and the Steins did so in reliance on information obtained in violation of grand jury secrecy.

The question thus remains: did this action by the IRS agents so taint the investigation that enforcement of the summonses would amount to an abuse of the court's process? As a first step in answering this question we look again to *Powell*, where the Court gave some indication as to the type of conduct by IRS agents that would constitute an abuse of process. The Court stated:

> Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.

379 U.S. at 58, 85 S.Ct. at 255. The taxpayers do not contend in the cases at hand that the summonses were issued for an improper purpose. There is ample precedent, however, for the proposition that even when an IRS summons is issued for a proper purpose, illegal conduct by the agents during the investigation (and prior to the issuance of the summons) may so "reflect[ ] on the good faith of the ... investigation," *id.*, that enforcement would amount to an abuse of process.

In *United States v. Bank of Commerce*, 405 F.2d 931 (3d Cir.1969), for example, the taxpayer claimed "that the information which called [the IRS agent's] attention to the 1960 bank records [the records being summoned] was the product of an unlawful search and seizure, that this information— 'the leads'—is tainted by the search and seizure and that, therefore, the bank records are also tainted and their production should not be compelled." *Id.* at 934. This court held that "the district court should hear and determine appellant's Fourth Amendment claim and thus assure

---

**6.** The parties extensively briefed and argued the issue of the retroactivity of *Baggot;* the controversy focused on the proper application of the Supreme Court's test for determining retroactivity set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Under *Chevron Oil,* a case is presumed to have retroactive effect unless, as a threshold matter, it established "a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed...." *Id.* at 106, 92 S.Ct. at 355. If this criterion is met, the court must then weigh whether retroactive applica- tion would further or retard the rule in question, and whether retroactive application would be inequitable. *Id.* at 106–07, 92 S.Ct. at 355–56.

The taxpayers argue that *Baggot* does not meet the threshold requirement for prospective application under *Chevron Oil* because it was clearly foreshadowed by several cases, including *In re Grand Jury Proceedings,* 309 F.2d 440 (3d Cir. 1962); *Robert Hawthorne, Inc. v. Director of Internal Revenue,* 406 F.Supp. 1098 (E.D.Pa. 1976); *In re Grand Jury Investigation William H. Pflaumer & Sons, Inc.,* 53 F.R.D. 464 (E.D.Pa. 1971). The IRS contends that *Baggot* simply "came out of the blue."

itself that its process will not be abused." *Id.* at 935; *see also United States v. Beacon Federal Savings and Loan,* 718 F.2d 49, 54 (2d Cir.1983) (holding that if taxpayers could show on remand that an unconstitutional search and seizure had led to the summonses at issue, they might—if the violation was serious enough—be entitled to have those summonses quashed); *United States v. Deak Perera & Co.,* 566 F.Supp. 1398 (D.D.C.1983) (IRS motion to enforce summons denied where it was based upon information improperly obtained during audit to determine compliance with Currency and Foreign Transactions Reporting Act, 31 U.S.C. §§ 5311–14, 5316–22 (1982)).

It is clear from *Bank of Commerce* and *Beacon Federal* that quashal of a summons does not follow automatically from improper agency conduct. We do not believe that the conduct by the agents in the present cases, even if technically illegal, rises to the level necessary to justify a refusal to enforce the summonses. First, unlike the situations in *Bank of Commerce* and *Beacon Federal,* there is no contention here that the agents acted in violation of anyone's constitutional rights, only that they violated a rule of criminal procedure designed to protect the secrecy of grand jury materials. More important, the agents complied with the rule as it was widely interpreted at the time: they went before a district court for a Rule 6(e) order permitting them access to the grand jury materials, and the court granted them a facially valid order. The agents acted in good faith reliance thereon. In short, the conduct of the agents in no way reflects negatively on the good faith of the investigation, *see Powell,* 379 U.S. at 58, 85 S.Ct. at 255, and enforcement of the summons would not constitute an abuse of process.

Two Supreme Court cases dealing with the exclusionary rule in the fourth amendment context lend strong support to our conclusion: *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975) and *United States v. Leon,* — U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Peltier,* the Court considered whether it should apply the holding in *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973)—that a warrantless border patrol search approximately twenty-five miles from the border violated the fourth amendment—to exclude evidence from a search conducted under similar circumstances before *Almeida-Sanchez* was decided. The Court noted that

> if the law enforcement officers reasonably believed in good faith that evidence they had seized was admissible at trial, the 'imperative of judicial integrity' is not offended by the introduction into evidence of that material even if decisions subsequent to the search or seizure have broadened the exclusionary rule to encompass evidence seized in that manner.

*Peltier,* 422 U.S. at 537, 95 S.Ct. at 2317. The court also stated that, in light of the good faith reliance of the officers on the state of the law as they found it, retroactive application of *Almeida-Sanchez* would have no deterrent effect. *Id.* at 538–39, 95 S.Ct. at 2318. Accordingly, it reversed the court of appeals' determination that the evidence seized was to be excluded.

In *Leon,* police officers obtained a "facially valid search warrant," 104 S.Ct. at 3410, from a state superior court prior to conducting a search of defendant's residence for contraband. The defendant was indicted by a federal grand jury and charged with conspiracy to possess and distribute cocaine, and a number of substantive drug counts. The United States District Court for the Central District of California concluded that, although the police officers had acted in good faith pursuant to what they believed to be a valid warrant, the search was invalid because the warrant was not supported by probable cause. The court thus suppressed evidence gathered during the search. The Court of Appeals for the Ninth Circuit affirmed. The Supreme Court held, however, that

> the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant

cannot justify the substantial costs of exclusion.

*Id.* at 3421.

The conduct by the IRS agents in the cases before us is remarkably similar to the conduct of the police officers in *Peltier* and *Leon.* Here, the IRS agents acted in good faith reliance on a facially valid Rule 6(e) order issued by a United States District Court.[7] Under such circumstances, enforcement of the resultant summonses will not offend the integrity of the judicial process, nor would refusal to enforce the summonses deter future misconduct by IRS agents.[8] These agents will, of course, continue to act pursuant to facially valid court orders—as indeed they should. Moreover, deterrence is unnecessary because *Baggot* forecloses access by the IRS to grand jury materials for the purpose of determining civil tax liabilities. There is thus no justification supporting the quashing of the summonses in the present cases.

## IV. CONCLUSION

▄ We hold, even assuming that the IRS summonses sought to be enforced in the cases before us were based upon information obtained in violation of grand jury

secrecy, that the conduct of the IRS agents in relying on a facially valid Rule 6(e) order did not so taint the Service's investigation of the taxpayers as to render enforcement of the summonses an abuse of the court's process. Accordingly, we will reverse the judgment of the district court in *United States v. Stein,* No. 84-5323, which granted the Steins' motion to quash and denied the IRS's motion for summary enforcement, and remand for the entry of judgment on both motions in favor of the IRS. We will affirm the judgment of the district court denying the Glucks' motion to quash and granting the IRS's motion for summary enforcement in *United States v. Gluck,* No. 84-5282.

GARTH, Circuit Judge, dissenting:

Although I concur in the majority's ultimate holding that enforcement of the IRS summonses currently before us would not be an abuse of the court's process since the IRS agents acted in good faith reliance on a facially valid rule 6(e) order, I cannot agree that the appeal in *United States v. Gluck* at No. 84-5282 presents a live case or controversy. During the pendency of this appeal, full compliance was had with the summonses at issue in the *Gluck* mat-

---

7. The existence of the Rule 6(e) order is crucial to the force of the *Leon* analogy. The agents in *Leon* acted not merely in objective good faith, but in good faith pursuant to a facially valid search warrant issued by a neutral state court judge. Whether the good faith rule should be extended outside of this context is a current subject of debate. *See, e.g.,* Case Comment, *Exclusionary Rule—Good Faith Exception,* 98 Harv.L.Rev. 108 (1984). Since the IRS agents in the present cases acted in good faith reliance on a judicial order, this case falls squarely within the reasoning of *Leon.*

8. Neither *Powell* nor its progeny articulate the precise policy basis for the abuse of process rule in IRS summons cases, although "abuse of process" has clear judicial integrity overtones and the cases suggest that deterrence of governmental misconduct is an important, if not primary, consideration. *See, e.g., Beacon Federal,* 718 F.2d at 53–54. Recent Supreme Court cases in the fourth amendment area, however, have cast significant doubt on the vitality of the judicial integrity rationale for the exclusionary rule. *See, e.g., United States v. Janis,* 428 U.S. 433, 458–59 n. 35, 96 S.Ct. 3021, 3034 n. 35, 49

L.Ed.2d 1046 (1976) (suggesting that deterrence rationale subsumes judicial integrity rationale by arguing that use of evidence obtained in violation of fourth amendment does not offend judicial integrity if its exclusion would not deter police misconduct); *Stone v. Powell,* 428 U.S. 465, 485, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976) ("While courts, of course, must ever be concerned with preserving the integrity of the judicial process, this concern has limited force as a justification for the exclusion of highly probative evidence."); *see also Tirado v. Commissioner of Internal Revenue,* 689 F.2d 307, 309 (2d Cir.1982) ("The Supreme Court has made it plain that the principal, if not the only, justification for excluding illegally seized evidence from governmental proceedings is to deter future governmental misconduct.").

We need not decide the relative importance of the two justifications for the abuse of process rule, however, because the quashing of the summonses in this case would promote neither judicial integrity nor deterrence of governmental misconduct.

ter.[1] Because the Glucks' appeal did no more than challenge the enforceability of the summonses, compliance by the banks, each of which furnished the records sought by the summonses, has ended the particular controversy that was the subject of that appeal. Indeed, the banks' compliance has necessarily deprived this court of the ability to grant any relief which could possibly affect the legal rights of either party to seek or to resist enforcement of the summonses. The majority's opinion in the *Gluck* case can thus be no more than purely advisory.

Unlike the majority, I do not believe we should rely upon the completely speculative possibility that future criminal or civil proceedings may be instituted against the Glucks to endow their present appeal with a vitality it no longer possesses. Should the government initiate any subsequent proceedings against the Glucks, the Glucks may at that time move to suppress the use of any information which was obtained by the government as a result of compliance with the summonses. *See, e.g., G.M. Leasing Corp. v. United States*, 429 U.S. 338, 359, 97 S.Ct. 619, 632, 50 L.Ed.2d 530 (1977); *Donaldson v. United States*, 400 U.S. 517, 531, 81 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). Suppression, however, is not a remedy which is called for at this time or which we should fashion as an incident to a petition to quash. I would therefore dismiss the appeal in No. 84–5282 as moot.

## I.

The prior case law in this circuit contains seemingly conflicting authority as to whether compliance with a summons or subpoena moots an appeal challenging its enforcement. *Compare Vesco v. Securities and Exchange Commission*, 462 F.2d 1350 (3d Cir.1972) *with United States v. Waltman*, 525 F.2d 371 (3d Cir.1975) *and United States v. Friedman*, 532 F.2d 928 (3d Cir.1976). In *Vesco*, the court held that full compliance with an SEC subpoena dur-

ing the pendency of the appeal "obviated the 'case or controversy' originally surrounding the subpoena." 462 F.2d at 1351. The *Vesco* court accordingly dismissed the appeal as moot.

In the later cases of *Waltman, supra,* and *Friedman, supra,* however, separate panels of this court concluded that compliance with an IRS summons during the pendency of an appeal which challenged the particular summons' validity did not moot the appeal. *Waltman* involved a challenge to the enforcement of an IRS summons seeking production of an expense diary claimed by the taxpayer to be a personal record rather than a corporate record within the meaning of the summons. *Friedman* challenged the propriety of the government's purpose in issuing summonses to obtain certain individual and corporate records. Although *Waltman* and *Friedman* thus differed in the precise issues they presented, each court reasoned that compliance did not moot the respective appeals, since suppression of the involved records might result should the taxpayers prevail in their claims.

Significantly, neither the *Waltman* nor the *Friedman* court discusses the earlier and contrary *Vesco* holding. The majority here attempts to distinguish *Vesco* by emphasizing that the *Vesco* plaintiffs sought to resist production of subpoenaed documents on the grounds that disclosure would subject them to criminal penalties under Swiss law. The majority reasons that because an American court lacked power to direct the actions of Swiss authorities, compliance with the subpoena necessarily rendered the appeal moot. *See* Maj. op. at 754. In the majority's view, the crucial distinguishing factor is that no post-disclosure remedy fashioned by the *Vesco* court could have had extraterritorial effect.

This attempt to distinguish *Vesco* from *Waltman* and *Friedman*, while ingenious, is flawed. The *Vesco* court did not rely

---

**1.** Three separate IRS summonses are challenged in this appeal. In April 1983, two summonses, seeking various financial records of the Glucks, were issued to the Franklin State Bank. *See* app. at 3, 7. An additional summons was issued to the First National State Bank—Edison. *See* app. at 11. During the pendency of this appeal, each bank complied with the summonses.

upon the fact that the plaintiffs faced potential criminal liability in a foreign jurisdiction as determinative of the mootness issue. Instead, the *Vesco* court, noting that the complaint sought to enjoin compliance with a particular subpoena, concluded that compliance inevitably ended any controversy concerning that subpoena's ultimate enforcement. In effect, compliance itself had settled the very issue raised by the *Vesco* plaintiffs' complaint, i.e., whether the plaintiffs had to comply with the subpoena. The logic of the *Vesco* court would thus compel a conclusion that compliance mooted the appeal, no matter whether the plaintiffs faced potential foreign or domestic criminal proceedings.

I therefore cannot subscribe to the majority's effort to distinguish *Vesco*. To the extent that any conflict exists between *Vesco* and *Waltman* and *Friedman*, *Vesco*, as the earlier case, must control our decision. *See O. Hommel Co. v. Ferro Corp.*, 659 F.2d 340, 354 (3d Cir.1981). Neither can I agree with the majority's statement that in the present case, unlike *Vesco*, "at issue is not only the act of turning the documents over to the government but also the use of information obtained from these documents." Maj. op. at 754. As the majority itself notes, the Glucks' central argument before us has been that the alleged breach of grand jury secrecy by IRS agents should bar the IRS from receiving the court's aid in acquiring information by use of a summons. Indeed, a review of the Glucks' amended petition to quash discloses that their sole challenge is to the enforceability of the summonses. No question of suppression has been properly raised before this court. Nor can such a question be raised at this stage. *See Donaldson*, 400 U.S. at 531, 81 S.Ct. at 542 ("to the extent [a taxpayer] may claim an abuse of process, [he] may always assert ... that

claim in due course at its proper place in any subsequent trial.") In the absence of some further civil or criminal proceedings against the Glucks, the question of suppression remains completely speculative.

Other courts of appeals, which have considered the effect of compliance with an IRS summons during the pendency of an appeal, have uniformly held that compliance moots the appeal. *See United States v. Kis*, 658 F.2d 526, 532–35 (7th Cir.1981) (compliance with IRS summons moots appeal challenging its enforceability since court is unable to grant any relief and suppression should not be considered until government initiates some further proceedings in which use of evidence is sought); *United States v. Arthur Andersen & Co.*, 623 F.2d 720 (1st Cir.1980) (compliance moots appeal; "in the absence of some compelling circumstances that militate in favor of our deciding an otherwise moot case, the "capable of repetition yet evading review" exception is not available to a litigant aggrieved by a summons or subpoena who could have avoided mootness by refusing to comply"); *United States v. Deak-Perera Banking Corp.*, 610 F.2d 89 (2d Cir.1979) (same); *Barney v. United States*, 568 F.2d 116 (8th Cir.1978) (same); *Kurshan v. Riley*, 484 F.2d 952 (4th Cir.1973) (same); *United States v. Lyons*, 442 F.2d 1144 (1st Cir.1971) (mere possibility of future criminal proceedings does not in itself justify appellate consideration of the propriety of the summons when compliance has mooted appeal); *Lawhon v. United States*, 390 F.2d 663 (5th Cir.1968) (same). These courts have generally recognized that once compliance has mooted an appeal, to address the question of suppression of evidence in the absence of some actual criminal or civil proceeding is to do no more than deliver an advisory opinion.[2] Unlike

---

**2.** The majority suggests that a distinction may be drawn between those cases in which a summons is issued directly to the taxpayer and those in which a summons is issued to a third party, such as a bank or other financial institution. *See* Maj. op. at 754, n. 3. Specifically, the majority argues that both the *Kis* and *Andersen* courts would establish a more lenient mootness standard when compliance results from the actions of a third party. Presumably, the rationale for such a relaxed standard is that a disinterested third party should not be required to resist a summons and risk contempt in order to keep a controversy live.

However, because compliance may result from the actions of a third party does nothing to

the majority, I believe we should refrain from reaching the merits of the Glucks' appeal.

## II.

In light of our prior decision in *Vesco* and in light of the overwhelming weight of precedent in other courts of appeals, I would therefore hold that compliance with the summonses at issue has mooted the appeal in *United States v. Gluck*, No. 84–5282. The particular controversy that formed the subject of the Glucks' appeal—the enforceability of the summonses—has ceased to exist. Nor can the mere possibility that some future proceeding may be instituted against the Glucks provide a live case or controversy capable of present resolution. I therefore respectfully dissent from that portion of the majority's opinion which holds the *Gluck* appeal is not moot.

## III.

One further observation is necessary to explain my dissenting opinion, even though the ultimate outcome of the *Gluck* appeal remains unchanged. I have felt compelled to write at some length about the mootness issue in the *Gluck* appeal for two reasons. First, the question of mootness goes directly to our jurisdiction to entertain the appeal. As a court of limited jurisdiction, whose ability to decide questions of law is constitutionally defined by the case or controversy requirement of Article III, we are not empowered to decide abstract or purely hypothetical questions. In the absence of a concrete and continuing case or controversy, we lack jurisdiction and hence power to decide questions of law which can have no effect on the particular litigants before the court.

ensure that future proceedings, in which the introduction of information obtained by means of a challenged summons is sought, will be initiated. Whether the taxpayer himself or some third party complies is thus ultimately irrelevant to the mootness issue. This is necessarily so, since it is the very act of compliance, rather than the individual or institution which complies, that ends the controversy surrounding

Second, although I believe the mootness of the Gluck appeal is manifest, the jurisprudence of this Circuit contains ostensibly conflicting authority as to whether compliance with an IRS summons moots an appeal challenging enforcement of that summons. As noted, the decision in *Vesco* requires that we dismiss the Gluck appeal as moot. The later cases of *Waltman* and *Friedman,* however, indicate a contrary result. However, neither *Waltman* nor *Friedman* discusses or distinguishes *Vesco.* They thus invite the particular difficulty encountered in the present appeal.

The question whether compliance with a summons moots an appeal challenging its enforceability is hardly esoteric. Rather, it is one that has arisen repeatedly in the past and that will undoubtedly arise in the future. The district courts in this Circuit should not be required to choose between purportedly conflicting decisions reached by various panels of this court. Of course, as I have earlier noted, to the extent that any conflict exists between *Vesco* and the later cases, precedent and our Internal Operating Procedures[3] dictate that *Vesco,* as the earlier case, must control. *See O. Hommel,* 659 F.2d at 354. If, however, the full court feels that a widening conflict exists between *Vesco* and the developing law of this Circuit or that the rule of *Vesco* is not supportable and should be overturned, I would urge that the question, whether compliance engenders mootness, be considered by the court *en banc.* I believe that the integrity of our jurisprudence and the discharge of our function in guiding and informing the district courts require no less. Until an *en banc* hearing is ordered, *Vesco* must govern any decision on this issue.

the enforceability of any particular summons. Until some subsequent proceeding is commenced, no concrete controversy demanding decision exists.

**3.** *See* United States Court of Appeals for the Third Circuit, Internal Operating Procedures, Ch. VIII, § C (1983).